# COUNTY OF SPOKANE, WASHINGTON, ET AL. *v.* UNITED STATES.

No. 164.   Argued February 20, 21, 1929.—Decided April 8, 1929.

*Mr. Charles W. Greenough,* with whom *Messrs. A. O. Colburn* and *S. R. Clegg* were on the brief, for petitioners.

82

*Solicitor General Mitchell, Assistant Attorney General Mabel Walker Willebrandt,* and *Messrs. Sewall Key* and *John Vaughan Groner,* Special Assistants to the Attorney General, were on the brief for the United States.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

This case presents the question of the priority of payment of debts due to the United States over those due to a State or its agencies against the same fund for state taxes, under § 3466 of the Revised Statutes of the United States.

In August, 1922, a receiver for the Culton-Moylan-Reilly Auto Company, an insolvent corporation, was appointed by the Superior Court of Spokane County, Washington. Under the order of the court the receiver sold the personal property of the corporation and reduced the same to cash, which he held for distribution. On March 1, 1921, and March 1, 1922, Spokane and Whitman Counties, of the State of Washington, had assessed against the personal property of the company the total amounts of $6,195.38 and $410.36, respectively; but the taxes were

not paid and the proceeds of the subsequent sale of assets by the receiver were deposited in court. On September 23, 1924, Spokane County assessed the money in the hands of the receiver for the years 1923 and 1924, and levied taxes thereupon in the total amount of $1,390.10. On December 20, 1926, Spokane County made a further assessment and levy on the moneys in the hands of the receiver for the years 1925 and 1926 in the total amount of $1,229.52.

The United States Commissioner of Internal Revenue, on February 28, 1923, and May 2, 1923, assessed Federal income taxes and penalties for the years 1917, 1918, 1919 and 1920 in the total amount of $70,268.58. But none of these taxes or penalties were paid.

The funds in the hands of the receiver are insufficient to pay in full the claims of the United States, and Spokane and Whitman counties. By proper pleadings, issues were made, presenting the question of the comparative priorities in distribution of the fund in his hands. The Superior Court held that the two counties were entitled to priority, not only as to the county taxes levied against the corporation, but for the county taxes for 1923–1926 assessed on the money in the receiver's hands. On an appeal to the Supreme Court of Washington, the judgment was reversed and priority awarded to the United States. 147 Wash. 176.

Section 3466 of the Revised Statutes provides in part that " whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied."

The Constitution, Article 1, Section 8, provides that Congress shall have power to lay and collect taxes and to make all laws which shall be necessary and proper to carry this and its other powers into execution. Article IV of

the Constitution declares that the Constitution and the laws made in pursuance thereof shall be the supreme law of the land.

The constitutional validity of the priority of claims of the United States against insolvent debtors, declared in § 3466, was established by this Court very early in the history of the Government. *United States* v. *Fisher*, 2 Cranch 358. But it was not established as between debts owing to the States and debts owing to the United States until after a critical controversy between those who looked to the maintenance of the supremacy of the national government and those who were anxious to sustain undiminished the power of the States.

Section 3466 R. S. was § 5 of an Act entitled "An Act to provide more effectually for the settlement of accounts between the United States and receivers of public money," enacted in 1797, c. 20; 1 Stat. 515. It was amended by an Act of 1799, § 65, c. 22; 1 Stat. 676.

The language has been varied very little since these original enactments. The whole Act of 1797 came up for consideration in *United States* v. *Fisher*. There seems to have been a division among the Judges. Chief Justice Marshall delivered the opinion of the Court, which upheld the priority of the United States as against the claims of the States, and held that the Act extended not only to revenue officers and persons accountable for public money, but to debtors generally. The Chief Justice said (p. 396):

" If the act has attempted to give the United States a preference in the case before the court, it remains to inquire whether the constitution obstructs its operation. . . .

" The government is to pay the debt of the Union, and must be authorized to use the means which appear to itself most eligible to effect that object. It has, consequently, a right to make remittances by bills or otherwise,

and to take those precautions which will render the transaction safe.

" This claim of priority on the part of the United States will, it has been said, interfere with the right of the state sovereignties respecting the dignity of debts, and will defeat the measures they have a right to adopt to secure themselves against delinquencies on the part of their own revenue officers. But this is an objection to the constitution itself. The mischief suggested, so far as it can really happen, is the necessary consequence of the supremacy of the laws of the United States on all subjects to which the legislative power of congress extends."

This case was decided in 1805. Later that year the question arose in a Pennsylvania state court. *United States* v. *Nicholls,* 4 Yeates 251. Nicholls was indebted to the United States, and on June 9, 1798, executed a mortgage to the United States supervisor of the revenue for the use of the United States. There was a levy upon the lands of Nicholls and they were sold for $14,530. The money was deposited in the hands of the prothonotary of the court, subject to the court's order. Nicholls made an assignment for the benefit of his creditors and a commission of bankruptcy issued against him. The Attorney General relied on this same 5th section of the Act of 1797, and the issue arose whether in the distribution of that fund the laws of Pennsylvania, giving a preference to that State in the payment, should prevail over the federal act of 1797. Mr. Justice Yeates, speaking for the Court, said, p. 259:

" Congress have the concurrent right of passing laws to protect the interest of the union, as to debts due to the government of the United States arising from the public revenue; but in so doing, they can not detract from the uncontrollable power of individual states to raise their own revenue, nor infringe on, or derogate from the sovereignty of any independent state. . . . The rights of

the general government to priority of payment, and the rights of individual states, are contemplated as subsisting at the same time, and as perfectly compatible with each other. This can only be effected by giving preference to each existing lien, according to its due priority in point of time. I know of no other mode whereby the several conflicting claims can with justice be protected and secured."

The colleagues of Judge Yeates concurred with him, but one of them expressed regret that the opinion in the *Fisher* case, *supra,* delivered previously, had not been furnished for comparison. The decisions in the *Fisher* and the *Nicholls* cases created much popular excitement, and, united with other issues of a similar character as between the supporters of the federal government and the state governments, led to much concern over the open defiance of the decisions of this Court, until the issues were disposed of in the case of *United States* v. *Judge Peters,* 5 Cranch 115. See the account of the litigation in Charles Warren's Supreme Court in United States History, vol. 1, pp. 372, 538 *et seq.* Four years after the decision in the *Nicholls* case, a review of that case was sought in this Court on a writ of error. When it came to be heard, after nine years more of inaction, it was dismissed for lack of jurisdiction, on the ground that the record did not disclose the insolvency of the debtor so as to make § 3466 applicable; and thus was eliminated the federal question. 4 Wheat. 311.

No question of the construction of § 3466 seems to have come before this Court again until, in *Field* v. *United States,* 9 Pet. 182, it was sought to make certain trustees liable from their own funds, because they had made disbursements out of a bankrupt's estate, as to which the United States was entitled to priority. It was objected that the distribution had been made under order of the parish court in an action in which the United States was

not a party. This Court held that the United States was not bound to become a party, and said, p. 201:

" The local laws of the state could not, and did not, bind them [the United States] in their rights. They could not create a priority in favor of other creditors, in cases of insolvency, which should supersede that of the United States."

The power of the Congress of the United States, in giving preference to the debts of the Government of the United States over those of the separate States, is very clearly brought out in *Lane County* v. *Oregon*, 7 Wall. 71, which may well be referred to here, because there are some expressions in that opinion which, taken away from their context, have been used to give an erroneous view.

After discussing the taxing powers of the national and state governments, the Court, speaking by Chief Justice Chase, said of the state power of taxation, p. 77:

" It is indeed a concurrent power, and in the case of a tax on the same subject by both governments, the claim of the United States, as the supreme authority, must be preferred; but with this qualification it is absolute. The extent to which it shall be exercised, the subjects upon which it shall be exercised, and the mode in which it shall be exercised, are all equally within the discretion of the legislatures to which the States commit the exercise of the power. That discretion is restrained only by the will of the people expressed in the State constitutions or through elections, and by the condition that it must not be so used as to burden or embarrass the operations of the national government."

In *United States* v. *Snyder*, 149 U. S. 210, the question was raised whether the tax system of the United States could be made subject to the recording liens of the States. This Court said, p. 214:

" . . . the grant of the power and its limitation are wholly inconsistent with the proposition that the States

can by legislation interfere with the assessment of Federal taxes . . ."

In *United States* v. *San Juan County*, 280 Fed. 120, and in *Stover* v. *Scotch Hills Coal Co.*, 4 F. (2d) 748, § 3466 came directly under consideration, and the priority of the United States against that of the States was fully sustained. It was also sustained by an unreported decision of the District Court of the Eastern District of Washington, in a proceeding relating to the very taxes here involved, but the judgment was reversed for lack of jurisdiction because the jurisdiction of the state courts had first attached. *Merryweather* v. *United States*, 12 F. (2d) 407.

Petitioners rely on *Ferris* v. *Chic-Mint Gum Co.*, 14 Del. Ch. 232, where there were several claimants,—a mortgagee, the State, and the United States. Under R. S. 3186, the mortgagee was given priority over the United States. By state law, the State was preferred to the mortgagee. The Chancellor allowed the claims in the order of the State, the mortgagee, and the United States, holding that " when the Government agreed by Section 3186 to take rank after the mortgagee, it must necessarily follow that it is subordinate in rank to those who are superior to its immediate senior." The Chancellor observed that his conclusion arose out of the peculiar facts of the case, and that it was unnecessary for him to venture into the broad field of constitutional law. Without concurring in the conclusion of the Chancellor, it is enough to say that, as there is no such third creditor here, the case is not in point. Moreover, it is contended by the Government that the relative priorities could have been maintained in that case by setting apart sufficient funds to pay the mortgage before paying the federal taxes and then providing for payment of the state tax out of the sum so set apart.

In *United States* v. *National Surety Co.*, 254 U. S. 73, the question was whether, in the distribution of a bank-

rupt's estate, the United States had priority over a surety company entitled to subrogation under § 3468 of the Revised Statutes. Upon this point this Court said, p. 76:

"The priority secured to the United States by § 3466 is priority over all other creditors; that is, private persons and other public bodies."

After these cases came the case of *United States v. Oklahoma*, 261 U. S. 253, in which the question was of the application of § 3466 to the liquidation of a state bank under the state law and of priority of debts of the United States in such a case. This Court found that the section did not apply, because there did not appear to be insolvency of the bank as used therein. But the Court had to consider the meaning and effect of the section, and said, p. 260:

"Where the debtor is divested of his property in one of the modes specified in the act, the person who becomes invested with the title is made trustee for the United States and bound first to pay its debt out of the debtor's property. *Beaston* v. *Farmers' Bank of Delaware*, 12 Pet. 102, 133–135. The priority given the United States can not be impaired or superseded by state law."

Section 3466 was fully considered in the case of *Price* v. *United States*, 269 U. S. 492, and its history from 1789 clearly traced. See also *United States* v. *Butterworth-Judson Corp.*, 269 U. S. 504; *Bramwell* v. *U. S. Fidelity Co.*, 269 U. S. 483; *Stripe* v. *United States*, 269 U. S. 503. In these cases the word "debts" used in the section was held to include taxes. The Court said in the *Price* case, citing an opinion of Mr. Justice Story, p. 499:

"The claim of the United States does not rest upon any sovereign prerogative; but the priority statutes were enacted to advance the same public policy which governs in the cases of royal prerogative; that is, to secure adequate public revenue to sustain the public burdens. *United States* v. *State Bank of North Carolina*, 6 Pet. 29,

35. And to that end, § 3466 is to be construed liberally. Its purpose is not to be defeated by unnecessarily restricting the application of the word ' debts ' within a narrow or technical meaning."

The foregoing citations certainly make it clear that the United States has power, in order to collect its taxes and its revenues and debts due it, to confer priority for them over those of the States.

There remains only to determine what priority it has conferred. It may withhold it or vary it, and it has sometimes done so. When, in this case, did the priority attach and apply? It was said in *United States* v. *Oklahoma*, 261 U. S. 253, 260, that in a case like this it applied when the receiver was appointed. The appointment was on August 28, 1922. The taxes and penalties due the United States, amounting to $70,268.58, were assessed on February 28, 1923, and May 2, 1923, and therefore the priority of the United States attached on or before those dates. No assessment by the counties upon specific property in the hands of the receiver was made until September 23, 1924. The claim of the United States, therefore, had priority over such claims.

Assessments for Spokane County for $6,195.38, and of Whitman County for $410.36, were made in 1921 and 1922 before the receiver was appointed. What is the effect of those claims against the fund in court? In *Wilberg* v. *Yakima County*, 132 Wash. 219, it is held that the amount of the tax is the personal obligation of the person who owned the property at the time of the assessment, and that the tax is to be collected, if the property still continues in the hands of the person against whom it was assessed, from the property; if that specific property does not exist in such hands, the amount of the tax may be collected as a lien upon all the real and personal property of the person assessed, and may be collected from the other personal or real property of such person by seizure,

distraint or other specific proceedings. It would seem to follow that a lien for these particular taxes could not interfere with the priority of the United States, for there is nothing in this record to show that distraint by the sheriff or any of the necessary procedure mentioned in the statute followed.

From the judgment of the majority of the Supreme Court of Washington in this case, we must infer that the liens of the two counties for the taxes levied before the receiver was appointed and not collected were not specific. This is really a state question. It is explained by the concurring opinion of Judge Parker, as follows:

" I concur in the result reached in the foregoing majority opinion solely upon the ground that this tax debt due to the United States, viewed apart from any supporting lien right, has priority over this tax debt due the State of Washington, viewed apart from any supporting lien right. It seems to me that each of these two tax debts primarily came into existence by the levy of a tax in personam, and not by the levy of a tax in rem. I think a critical reading of the revenue legislation of the respective sovereignties, the United States and the state, and the record in this case showing the manner of levying in these respective taxes, will render this plain. The revenue legislation of each has prescribed procedure by which its personam tax debts may be made specific liens upon property of one personally owing such tax debt. This record, I think, warrants the conclusion that neither the United States, the state of Washington nor Spokane County for the state of Washington has ever, by the prescribed statutory procedure, perfected its inchoate tax lien right against any of the property of which the funds here in question are the proceeds. I therefore view these respective tax debts wholly apart from any supporting lien right. Thus I think the question of which shall be first satisfied out of these funds is determinable by the language of §3466,

quoted in the majority opinion, and hence must be determinable in favor of the United States."

Whatever might have been the effect of more completed procedure in the perfecting of the liens under the law of the State, upon the priority of the United States herein, the attitude of the state court relieves us of consideration of it.

*Judgment affirmed.*