NORTH RIVER COAL & WHARF CO. v.
McWILLIAMS BROS., Inc.

PEOPLE OF STATE OF NEW YORK v.
MACLAY et al.

No. 44.

Circuit Court of Appeals, Second Circuit.
June 13, 1932.

See, also, (D. C.) 28 F.(2d) 513; (D. C.)
32 F.(2d) 355; (C. C. A.) 37 F.(2d) 22.

John J. Bennett, Jr., Atty. Gen. (Charles
A. Schneider and Robert P. Beyer, Deputy
Asst. Attys. Gen., of counsel), for appellant.

George Z. Medalie, U. S. Atty., of New
York City (Samuel C. Coleman and Harry
G. Herman, both of New York City, of coun-
sel), for appellee.

Before MANTON, L. HAND, and
AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The question raised by this appeal is
whether under section 3466 of the U. S. Re-
vised Statutes (31 USCA § 191) claims of
the United States for unpaid income taxes
and for damages are entitled to priority over
claims of the state of New York for fran-
chise taxes and taxes for gross earnings.
The United States and the state of New York
each presented its claims to receivers who had
been appointed upon the filing of a creditors'
bill alleging that the assets of McWilliams
Bros., Inc., exceeded its liabilities and pray-
ing for the appointment of a receiver, and
upon an answer admitting the allegations of
the bill and joining in the prayer for relief.
The District Court awarded priority to the
United States.

The "consent receivership" in this case
was in effect a "voluntary assignment." Un-
der the decisions, the order appointing the
receivers gave the United States priority over
general creditors of the insolvent estate by
virtue of section 3466 of the Revised Statutes.
Price v. United States, 269 U. S. 492, 46 S.
Ct. 180, 70 L. Ed. 373; United States v.
Butterworth-Judson Corp., 269 U. S. 504, 46
S. Ct. 179, 70 L. Ed. 380. This priority at-
tached when the receivers were appointed.
United States v. Oklahoma, 261 U. S. at page
260, 43 S. Ct. 295, 67 L. Ed. 638. The ques-
tion is whether section 3466 gives priority not
only over the claims of general creditors, but
over the claims of the state of New York
for taxes, even though the taxes were liens
upon the property of the insolvent at the
time when the receivers were appointed.
This section is in terms very sweeping. It
provides that: "Whenever any person in-
debted to the United States is insolvent
* ' * the debts due to the United States
shall be first satisfied. * * *" The word
"debts" has long been held to include taxes.

The state of New York relies upon the
decision of the Supreme Court in Marshall v.
New York, 254 U. S. 380, 41 S. Ct. 143, 65
L. Ed. 315, which gave the state, by virtue
of its sovereign prerogative, a priority over
the general creditors of an insolvent that had
been placed in the hands of a receiver. It
says that, as this prerogative right was never
ceded to the federal government by the Con-
stitution, it avails as much against the United
States as against private creditors. But the
right of the United States depends upon its
delegated power under the Constitution
(Const. art. 1, § 8, cl. 18) to pass all laws
necessary for carrying into execution the ex-
press power to levy and collect taxes and du-

ties. Price v. United States, 269 U. S. 492, 46 S. Ct. 180, 70 L. Ed. 373. It is consequently paramount whenever exercised by statute.

The question of the extent of the state's prerogative recently came before the Supreme Court in Spokane County, Wash., v. United States, 279 U. S. 80, 49 S. Ct. 321, 73 L. Ed. 621. There taxes had been assessed against the personal property of a corporation by two counties in the state of Washington, and afterwards a receiver of its assets was appointed who sold the property and reduced it to cash. The Supreme Court of Washington (Exchange Nat. Bank of Spokane v. U. S., 147 Wash. 176, 265 P. 722, 62 A. L. R. 139), from which the appeal lay, had held that under the law of that state the liens of the counties for the taxes assessed before the receivei was appointed had not been made specific. After the appointment of the receivers, the Commissioner of Internal Revenue assessed income taxes against the corporation for years prior to the date of the receivership. The funds in the hands of the receiver were, as in the present case, insufficient to pay in full the claims of the United States and those of the counties. The court, per Taft, C. J., held that the taxes due the United States were entitled to payment by the receiver in priority to claims for county taxes that were not supported by a specific lien acquired prior to the appointment of the receiver. But he expressly reserved the question as to whether the taxes due the United States would have had priority if liens therefor had been perfected under the laws of the state prior to the receivership, and cited the decision of the Supreme Court of Washington in Wilberg v. Yakima County, 132 Wash. 219, 231 P. 931, 933, 41 A. L. R. 184, where it was held that, if a tax is to be collected from personal property, "it does not become a lien upon such property until it has been seized and distrained by the sheriff. * * *" He emphasized the broad scope of the taxing power of the United States, referred to the decisions of the Supreme Court in United States v. Fisher, 2 Cranch, 358, 2 L. Ed. 304, Field v. United States, 9 Pet. 182, 9 L. Ed. 94, Lane County v. Oregon, 7 Wall. 71, 19 L. Ed. 101, United States v. Snyder, 149 U. S. 210, 13 S. Ct. 846, 37 L. Ed. 705, and other cases, and, after discussing the authorities, went on to say (at page 93 of 279 U. S., 49 S. Ct. 321, 324): "The foregoing citations certainly make it clear that the United States has power, in order to collect its taxes and its revenues and debts due it, to confer priority for them over those of the states."

Since the decision in Spokane County, Wash., v. United States there can be no doubt that the United States should be awarded priority here, unless the taxes due the state of New York can be regarded as supported by a sufficient lien to give them a preference over claims of the United States in spite of Rev. St. § 3466 (31 USCA § 191).

Counsel for the state of New York attempt to distinguish Spokane County, Wash., v. United States on the ground that section 197 of the New York Tax Law (Consol. Laws, c. 60) provides that a franchise or gross earnings tax "shall be a lien upon and bind all the real and personal property of the corporation * * * until the same is paid in full," whereas the statute of the state of Washington before the court in the Spokane Case was construed as imposing no effective lien prior to the taking of subsequent proceedings to enforce it. But section 197, as it read when the New York taxes in the case at bar became payable, did not specify when the tax lien would arise, and section 201 provided that, upon the issue of a warrant by the tax commission commanding the sheriff to levy and sell the real and personal property of the taxpayer for delinquent taxes, "such warrant shall be a lien upon and shall bind the real and personal property of the * * * corporation against which it is issued, from the time an actual levy shall be made by virtue thereof." It might have seemed to result from these two sections (when read together) that the lien for state taxes only arises when a levy is made by the sheriff. But in New York Terminal Co. v. Gaus, 205 N. Y. 588, 98 N. E. 1109, a majority of the New York Court of Appeals held that section 197 imposed a lien for taxes which was superior to a mortgage. It is true that when New York Terminal Co. v. Gaus was decided section 197 provided that the taxes should "be a lien upon and bind all the real and personal property" of the corporation "from the time when it is payable until the same is paid in full," and that by amendment subsequent to that decision section 197 was changed so that the words "from the time it is payable" were omitted. Thus, when the franchise and gross earnings tax now before us accrued, section 197 had ceased to contain the words "from the time it is payable," and only provided that such a tax should be a lien "until the same is paid in full." Accordingly it might have been argued that by the amend-

ment, words in section 197 stating when the lien was to arise had purposely been omitted so as to leave section 201 to define the time. But the difficulty with this is that a similar contention was made in Carey v. Keith, Inc., 250 N. Y. at page 219, 164 N. E. 912, and the Court of Appeals there held that such an omission did not affect the time when the lien arose.

While it is clear that in the present case the taxes due the state of New York prior to the receivership were a general lien upon the real and personal property of the defendant at the time when the receivers were appointed, the question is not whether these taxes are statutory liens of some sort, but whether they are such liens as the courts of the United States have recognized as entitled to priority over claims due the government.

The Supreme Court appears to have given priority to the government under section 3466 or similar statutes in all cases except where the legal title of the taxpayer has been in some measure divested before the tax or other indebtedness became due. In Thelusson v. Smith, 2 Wheat. 396, 4 L. Ed. 271, debts due the United States were given precedence over the lien of a judgment-creditor who had not levied an execution against the property of the debtor. Justice Washington said, at page 426 of 2 Wheat., 4 L. Ed. 271: "If * * * before the right of preference has accrued to the United States, the debtor has made a bona fide conveyance of his estate to a third person, or has mortgaged the same to secure a debt, or if his property has been seized under a fi. fa., the property is divested out of the debtor, and cannot be made liable to the United States. A judgment gives to the judgment creditor a lien on the debtor's lands, and a preference over all subsequent judgment creditors. But the act of congress defeats this preference in favour of the United States, in the cases specified in the 65th section of the act of 1799."

At common law a real estate mortgage gave the mortgagee title subject only to an equity of redemption, and a chattel mortgage divested the mortgagor's title in the same way. The Supreme Court accordingly treated the title as no longer in the estate of the mortgagor, and gave government taxes priority only over interests in the equity of redemption. Conard v. Atlantic Ins. Co., 1 Pet. 386, 7 L. Ed. 189; Brent v. Bank of Washington, 10 Pet. 596, 9 L. Ed. 547. It was apparently this view of the divesting of the legal title that led the Supreme Court to subordinate government taxes to mortgages in days when the legal title was generally regarded as in the mortgagee. It was reiterated by Justice Gray in Savings Society v. Multnomah County, 169 U. S. at page 428, 18 S. Ct. 392, 395, 42 L. Ed. 803, where he said: "This court has always held that a mortgage of real estate, made in good faith by a debtor to secure a private debt, is a conveyance of such an interest in the land as will defeat the priority given to the United States by act of congress in the distribution of the debtor's estate. * * * *"

In view of the sweeping provisions of Rev. St. § 3466 (31 USCA § 191), it seems unlikely that it was intended to allow the mere statutory declaration by a state of a general lien to give the latter a preference over debts and taxes due the government. Neither the decisions of the Supreme Court nor the specified priorities allowed third parties under Rev. St. § 3186 as amended (26 USCA § 115) indicate that section 3466 is subject to any such limitation. We hold that the court below properly awarded priority to the United States.

The state contends that a portion of the franchise and gross earnings taxes, amounting to $238.26, which accrued after the appointment of the receivers, should be given priority as an expense of administration of the insolvent estate. In McGregor v. Johnson (C. C. A.) 39 F.(2d) 574, we allowed taxes on land accruing after the appointment of the receivers as a part of such administration expenses, but we did not pass on whether franchise taxes accruing during the receivership should be so treated. This question was not raised by the assignments of error which only claim priority of the taxes as a whole by virtue of the state's sovereignty. We accordingly shall not review the decision of the trial court as to this matter. See Spokane County, Wash., v. United States, 279 U. S. at page 85, 49 S. Ct. 321, 73 L. Ed. 621.

The order is affirmed.