## REESE v PROGRESSIVE TOOL & ENGINEERING CO

Ohio Common Pleas, Montgomery Co

No 80508. Decided Aug 6, 1937

274

## OPINION

By MARTIN, J.

This matter comes before the court on the application of the receiver of The Progressive Tool & Engineering Company to determine the priority of payment of tax liens asserted by the United States, the State of Ohio, and Montgomery County, Ohio, out of the assets of said company. Other claims, including those of an assignee, mortgagee, and wage claimants have been satisfied, adjusted or settled with the consent of all interested parties and need not be considered in the determination of priority.

The receiver herein was appointed by a consent decree on February 15, 1935, and the rights of all parties to this controversy became fixed at that time. Prior to that time, on October 6, 1934, the Tax Commission of Ohio filed its 1934 franchise tax lien in the office of the Montgomery County Recorder, after having made an assessment against the company as of June 15, 1934. On February 8, 1935, the Internal Revenue Department of the United States made an assessment against the company for unpaid and delinquent income tax and penalties. On February 12, the Internal Revenue Department filed an income tax lien at Cincinnati, Ohio with the clerk of the United States District Court, and on February 13, 1935, filed its tax lien in the office of the Montgomery County Recorder, Dayton, Ohio. On February 21, 1935 the Revenue Department filed its proof of claim for $27,500.00, more or less, unpaid income tax. On June 21, 1935, the State of Ohio, through the Tax Commission, filed its proof of claim for $33.72 unpaid corporation franchise tax with penalty. On August 28, 1935 the Industrial Commission of Ohio filed proof of claim with the receiver for unpaid industrial insurance premiums in the amount of $162.80.

Counsel for all contending parties admit, or do not deny, that the claim of the treasurer of Montgomery County for unpaid personal property tax accruing prior to the appointment of the receiver, if the same was filed of record as required by §5694 GC, stands. as a matter █ of law, on a parity with the claim of the Industrial Commission of Ohio for unpaid industrial insurance premiums, and that both of these claims are deferred to the claim of the Tax Commission of Ohio for the unpaid corporation franchise tax. §1465-88 GC.

The entire fund of $13,803.37 in the receiver's hands in April, 1936, plus other moneys since realized and to be realized on the remaining assets, not exceeding several thousand dollars in amount, will be insufficient to pay the federal income tax lien if it is entitled to priority. Consequently, if the court determines under the law and the facts that the income tax lien of the Unied States is prior and preferable to the corporation franchise tax lien of the State of Ohio it will be unnecessary to further consider the other tax claims.

Let us first refer to the statutory genesis of these two contending tax liens.

Secs 1560-1561 and 1562 U.S.C.A. (otherwise known as Revised Statute 3186), creating and providing for the filing of income tax liens, read as follows:

Sec 1560.

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

Sec 1561.

"Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time."

Sec 1562.

"Such lien shall not be valid as against any mortgagee, purchaser, or judgment creditor until notice thereof has been filed by the collector—

"(a) Under state or territorial laws In accordance with the law of the state or territory in which the property subject to the lien is situated, whenever the state or territory has by law provided for the filing of such notice; or

"(b) With the clerk of District Court. In the office of the clerk of the United States District Court for the judicial district in which the property subject to the lien is situated, whenever the state or territory has not by law provided for the filing of such notice; or

"(c) With clerk of District of Columbia Supreme Court. In the office of the clerk of the Supreme Court of the District of Columbia, if the property subject to the lien is situated in the District of Columbia."

Sec 5506 GC, providing for the creation of a franchise tax lien and the filing of notice thereof, reads as follows:

Sec 5506 GC.

"Annually on the day fixed for the payment of any excise or franchise tax required to be paid by law, such tax, together with any penalties subsequently accruing thereon, shall become a lien on all property in this state of a public utility or corporation, whether such property is employed by the public utility or corporation in the prosecution of its business or is in the hands of an assignee, trustee, or receiver for the benefit of the creditors and stockholders thereof. Such lien shall continue until such taxes, together with any penalties subsequently accruing thereon, are paid. Upon failure of such public utility or corporation to pay such tax on the day fixed for payment, the treasurer of state shall thereupon notify the tax commission and the tax commission shall file in the office of the recorder of the county in which the principal place of business of the public utility or corporation in this state is located (for which filing no fee shall be charged), notice of such lien and such lien shall not be valid as against any mortgagee, pledgee, purchaser or judgment creditor whose rights have attached prior to the time such notice is so filed. When such tax, together with any penalties subsequently accruing thereon, has been paid, the public utility or corporation may record with the recorder of the county in which their principal place of business is located, notice of such payment, for which recording the recorder shall charge and receive a fee of one dollar. Such notice shall be recorded in a book kept by the county recorder, called the corporation record, and indexed under the name of corporation."

The Internal Revenue Department of the United States has complied, as a matter of fact, with the requirements of §§1561 and 1562, U.S.C.A., governing the creation and filing of the income tax lien against defendant's property. The United States has likewise complied with the requirements of §2757-1, GC, regulating the filing of liens for internal revenue tax.

The Tax Commission of Ohio has complied with the requirements of §5506, GC, governing the creation and filing of notice of its franchise tax lien against defendant's property in this state.

It is admitted that the assessment and demand for payment of both the federal and state tax claims were made against defendant in accordance with the applicable federal and state statutes.

Let us next refer to the federal statute serving as the predicate for the claim of the United States to priority.

Title 31, §191 of the United States Code, otherwise known as §3466 Revised Statutes, providing for the priority of debts due to the United States by insolvent debtors, reads as follows:

"Priority established. Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all its debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

None of the parties to this controversy question the applicability of §3466, United States Revised Statutes, to the financial situation of the defendant company at the times the income tax lien was assessed and filed and at the time the receiver herein

was appointed. In their arguments and briefs all of the contending parties have assumed that §3466 U.S.R.S. does apply to the facts of this case. The court, nevertheless, to more clearly state its position, after taking judicial notice of the proceedings and records filed in this receivership, finds as a matter of law and fact that §3466 U.S.R.S. applies to this case, as the defendant, while possessed of insufficient assets or property to pay its debts, including income tax, consented to a receivership, the legal equivalent of a voluntary assignment of its property, and also committed thereby an act of bankruptcy while insolvent, both within the meaning of §3466 U.S.R.S.

Price v United States, 296 U. S. 492.

United States v Oklahoma, 261 U. S. 253.

Careful reading of Article VI of the U. S. Constitution, the briefs submitted by counsel for the United States, the State of Ohio, and Montgomery County, and the applicable cases and statutes cited, discloses that the contending parties and the law are expressly or by necessary implication in accord on the following propositions, to-wit:

1. That if all the liens contesting for priority were general and not specific when the receiver was appointed, the federal income tax lien should be preferred.

2. That if any one of the liens was specific, the general liens of the other parties involved should be deferred to such specific lien.

3. That if more than one party acquired a specific lien, the oldest in point of time should prevail.

In support of proposition number 1 the court cites the following authorities to refresh the recollection of counsel and give some direction to the reasoning that follows:

Article VI, second paragraph, United States Constitution reads as follows:

"This constitution, and the laws of the United States which shall be made in pursuance thereof, and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding."

The priority secured for the United States by Article VI, para. 2, U. S. Constitu-

tion and §3466 U.S.R.S. is priority over all other creditors; that is, private persons and other public bodies except those having specific liens. This priority is a necessary consequence of the supremacy of the laws of the United States on all subjects to which the legislative power of congress extends.

§3466 R. S. is a constitutional exercise of legislative power.

Chief Justice Marshall in U. S. v Fisher, 2 Cranch, 358.

Florida v Mellon, 273 U. S. 12.

U. S. v National Surety Co., 254 U. S. 73.

Spokane County v United States, 279 U. S 80.

Thelusson v Smith, 2 Wheaton, 396, 426, 4 L. Ed. 271.

Conard v Atlantic Ins. Co., 1 Peters 386 at 441, 442, 443 and 444.

People v Maclay, 288 U. S. 290.

United States v San Juan County, Washington, 280 Fed. 120.

Stover v Scotch Hills Coal Co., 4 Fed. (2d), 748.

West Coast Power Co. v Southern Kansas Gas Co., 122 A. 414.

Gerson, Beesley & Hampton, Inc. v Shubert Theatre Corp., 7 Fed. Suppl. 399.

The State of Ohio insists that it acquired a specific lien against the property and assets of defendant when it filed in the Montgomery County recorder's office the notice of lien required by §5506 GC, on the theory that by setting forth in such notice the specific amount of the lien claim, the date when the same became due, and that the same remained unpaid by the debtor made the lien specific. The State of Ohio, in the interest of consistency, likewise treats the filing of the federal income tax lien with the recorder of Montgomery County, Ohio as an act making such lien specific and contends that because the franchise tax lien of the state became specific prior to the income tax lien that the former is to be preferred over the latter.

The United States, on the contrary, contends that the State of Ohio never acquired a specific lien against deefndant's property and assets prior to the time the receiver was appointed, but that the franchise tax lien of the state, like the income tax lien of the United States, was general only.

As to the other two alleged claims which accrued prior to the appointment of the receiver, that of the Industrial Commission and of Montgomery County, all agree

that they were and are general liens only, if at all, junior to the franchise tax lien.

The sole question in controversy to be determined by this court is whether or not the franchise tax lien of the State of Ohio became specific before the appointment of the receiver herein. If it did become specific by virtue of its assessment and filing of record under §§5495-2, 5499, 5506, GC, prior to the assessment and filing of record of the federal income tax lien, then the State of Ohio must prevail. On the other hand, if neither the state franchise tax lien nor the federal income tax lien became specific prior to the appointment of the receiver, the United States must prevail.

What makes tax liens specific?

To answer this question it is necessary to examine not only the Ohio and federal statutes hereinbefore set forth but also all the available case law, state or federal, which has dealt with this particular question. Deferring for a moment any reference to the language of the statutes involved, the court will refer to established case law interpretations of what constitutes specific tax liens. There being no applicable case law in Ohio, the Ohio Legislature in enacting §§5506 and 5512 GC, in the absence of any stated intent to the contrary, is presumed to adopt the settled construction given and to be given by state and federal courts to similar legislative enactments of other states and §3466 U.S.R.S., so far as the nature and character of the acts required to make a corporation franchise tax lien specific are concerned.

To understand these comparatively recent holdings properly it is necessary to refer to the leading case of Thelusson v Smith, supra, which first stated the general rule in the United States, and which has since been applied in controversies concerning the priority of taxes and debts due the United States as compared with taxes due a state.

Justice Washington, speaking for the United States Supreme Court, in the year 1817, in the case of Thelusson v Smith, supra, said:

"The law (now §3466, Revised Statutes) (Language in parenthesis by the court) declares 'that in all cases of insolvency, &c. the debts due to the United States shall be first satisfied, and, if the assignees, &c. shall pay any debt due by the person or estate from whom or for which they are acting, previous to the debts due to the United States from such person or estate

being first duly satisfied, they shall become answerable for the same in their own persons and estates.' These expressions are as general as any which could have been used, and exclude all debts due to individuals, whatever may be their dignity. The assignees are made personally responsible to the United States if, in case of insolvency, they pay any debt previous to those due to the United States. The law makes no exception in favor of prior judgment creditors; and no reason has been, or we think can be, shown to warrant this court in making one.

"'Exceptions there must necessarily be as to the funds out of which the United States are to be satisfied, but there can be none in relation to the debts due from a debtor of the United States to individuals. The United States are to be first satisfied; but then it must be out of the debtor's estate. If, therefore, before the right of preference has accrued to the United States, the debtor has made a bona fide conveyance of his estate to a third person, or has mortgaged the same to secure a debt, or if his property has been seized under a fi. fa., the property is divested out of the debtor, and cannot be made liable to the United States. A judgment gives the judgment creditor a lien on the debtor's lands, and a preference over all subsequent judgment creditors. But the act of congress defeats this preference in favor of the United States, in the cases specified in the sixty-fifth section of the act of 1799."

Justice Story, in the case of Conard v Atlantic Insurance Company, 1 Peters 386, in discussing general and special liens and the holding of the Supreme Court in the Thelusson case, said:

Page 441.

"But it has never yet been decided by this court, that the priority of the United States will divest a specific lien, attached to a thing, whether it be accompanied by possession or not. * * *."

Page 442.

"The posture of the case then was that of a judgment creditor seeking to recover the proceeds of a sale of land sold under an adverse execution, out of the hands of the marshal, upon the ground of his having a mere general lien, by his judgment, on all the lands of his debtor, that judgment never having been consummated by any levy on the land itself. The court decided that the action was not maintain-

able. * * * Under the general assignment of the debtor, the priority of the United States attached; and if the assignees were willing to acquiesce in the sale, the right of the United States to hold the proceeds could not be disturbed by third persons. Now, it is not understood, that a general lien by judgment on land constitutes, per se, a property, or right, in the land itself. It only confers a right to levy on the same, to the exclusion of other adverse interest, subsequent to the judgment, so as to cut out intermediate incumbrances. * * *."

Page 443.

" * * * In short a judgment creditor has no jus in re, but a mere power to make its general lien effectual, by following up the steps of the law, and consummating his judgment by an execution and levy on the land. * * * The only remedy of the judgment creditor is against the thing itself, by making that a specific title, which was before a general lien. He can only claim the proceeds of the sale of the land, when it has been sold on his own execution, and ought to be applied to its satisfaction. To this state of things, the language of the court in Thelusson v Smith is to be applied, when it is said, that if the debtor's property is seized under a fi. fa. it is divested out of the debtor, and cannot be liable to the United States. * * *."

Pages 443 & 444.

"The real ground of the decision, was, that the judgment creditor had never perfected his title by any execution and levy on the Sedgely estate; that he had acquired no title to the proceeds as his property, and that if the proceeds were to be deemed general funds of the debtor, the priority of the United States to payment had attached against all other creditors; and that a mere potential lien on land did not carry a legal title to the proceeds of a sale, made under an adverse execution."

For an explanation of a statement of the United States Supreme Court through Justice Story, supra, to the effect that certain exceptional lien rights become perfect, independent of possession, see the case of Nathan v Giles, 5 Taunton, 558, at 754, last paragraph.

To further clarify the attitude of the United States Supreme Court on the acts required to make a lien specific, this court will refer to the language of Chief Justice

Taft, speaking in the Spokane County case, supra, where he stated:

"Assessments for Spokane County for $6,195.38, and of Whitman County for $410.36 were made in 1921 and 1922 before the receiver was appointed. What is the effect of those claims against the fund in court? In Wilberg v Yakima County, 132 Wash. 219, it is held that the amount of tax is the personal obligation of the person who owned the property at the time of the assessment, and that the tax is to be collected, if the property still continues in the hands of the person against whom it is assessed, from the property; if that specific property does not exist in such hands, the amount of tax may be collected as a lien upon all the real and personal property of the person assessed, and may be collected from the other personal or real property of such person by seizure, distraint or other specific proceedings. It would seem to follow that a lien for these particular taxes could not interfere with the priority of the United States, for there is nothing in this record to show that distraint by the sheriff or any of the necessary procedure mentioned in the statute followed." (Emphasis by the court).

Four years later, in 1933, Justice Cordoza, speaking for the United States Supreme Court in the case of New York v Maclay, supra, said:

"The decision of this court in County of Spokane, Washington v United States, 279 U. S. 80, 49 S. Ct. 321, 73 L. Ed 621, upheld the power of congress to give priority to debts due to the people of the United States, though the debts thereby subordinated were due to the people of a state, or its political subdivisions. To that decision we adhere. The hardship to the state, if there is any, 'is the necessary consequence of the supremacy of the laws of the United States on all subjects to which the legislative power of congress extends.' Marshall, C.J. in United States v Fisher, 2 Cranch, 358, 397, 2 L. Ed. 304. Cf. Florida v Mellon, 273 U. S. 12, 17, 47 S. Ct. 265, 71 L. Ed. 511.

"The tax held to have been subordinated in the Spokane County suit was not a perfected lien upon the property of the insolvent at the date of the receivership. 279 U. S. 80, 93, 94, 49 S. Ct. 321, 73 L. Ed. 621. Certiorari was granted in this case because of the claim of the petitioner that by the statutes of New York franchise taxes become liens in advance for the years

in which they are due, though the amount is not fixed, and must be liquidated thereafter."

"Liens in a sense they unquestionably are, but, we think, not so perfected or specific as to change the rule of distribution. The receivers were appointed, as we have seen, in January, 1927; and the petitioner, if not preferred at the time of the appointment, did not win itself a preference by anything done thereafter. United States v Oklahoma, 261 U. S. 253, 260, 43 S. Ct. 295, 67 L. Ed. 638. '* * *

"The problem here is different. To hold that a lien has progressed to such a point as to be a warning to mortgagees and purchasers of a contingent liability, like a notice of lis pendens, is far from holding that, while the liability is unliquidated and unknown, the lien thus created is perfect and specific. By the terms of the hypothesis it is nothing of the kind. If the state were to stand upon the warning and omit to ascertain the debt, it would never be able to sell anything, for it would not know how much to sell. Against mortgagees and purchasers a lien perfected afterwards may take effect by relation as of the date of the inchoate lien through which mortgagees and purchasers became chargeable with notice. The doctrine of relation will not divest the United States of the preference that accrued when receivers were appointed.

"In what has been written there has been an assumption in favor of the petitioner that the tax would have priority if its amount had been liquidated before rights and interests became static through insolvency proceedings. The assumption is hardly to be reconciled with a judgment of this court pronounced a century and more ago. Thelusson v Smith, 2 Wheat. 396, 426, 4 L. Ed. 271. The ruling there was that the general lien of a judgment upon the lands of an insolvent debtor is subordinate to the preference established by the statute, unless seizure by a marshal or some other equivalent act has made the lien specific and brought about a change of title or possession. * * * Enough for present purposes that the statutory preference must prevail against the lien of a tax not presently enforceable, but serving merely as a caveat of a more perfect lien to come." (Emphasis by the court).

In the case of Gerson, Beesley & Hampton, Inc. v Shubert Theatre Corporation et, supra, United States District Judge Caffey says:

"That the liens on the corporation's assets given to the United States by §3186 of the Revised Statutes and to the state by §219-c of the tax law were inchoate or general only, and not perfected or specific, is manifest from mere reading of the statutes themselves So far as I have discovered, the sole method prescribed by the law of New York for making a lien specific, in a case like that under consideration, is for the sheriff of a county where corporate property is located to levy on it a warrant issued by the State Tax Commission. This is true by force of §219-e of the Tax Law, which provides that the warrant is a lien upon the property levied on by the sheriff from the time of an actual levy. Here the exclusive method for rendering the state's lien specific was never resorted to. Not alone was there never an actual levy, but not even a warrant directing a levy was ever issued. In consequence, the state did not preceding October 20, 1931, or at any time acquire a specific lien.

"The lien of the state never having become specific and insolvency of the corporation having occurred, it follows, as I see it, that the United States is entitled to priority for its 1926 taxes over the state of New York for its 1928 taxes."

We return to examine the language of the various state and federal statutes set forth to determine the legislative intent, so far as it bears upon the creation of a general or specific tax lien. The language of §5506 GC does not specifically disclose any legislative intent to make any franchise tax lien "specific" through compliance with its provisions governing the creation and filing of the lien in the sense the word "specific" has been legally defined and understood when applied to statutory tax liens, nor does any provision of said section require or purport to require the doing of acts or their equivalent necessary to make the tax lien specific as a matter of law, such as levy or seizure of specific property. The Legislature seeming to recognize the incompleteness and generality of the tax lien created by §5506 GC enacted §5512 GC setting forth the procedure to be followed by the attorney general or his representatives to make a franchise tax lien complete and specific through the filing of a petition, the notification of interested parties, the appointment of a special master commissioner, the taking of a judgment and the enforcement thereof through mandatory injunction, ex-

ecution, or such other means as may be necessary.

Secs 3187, 3188, 3189, 3190 of the U.S.R.S., otherwise known as Title 26, §§1580, 1582, and 1583, U.S.C.A., provide the method whereby a general income tax lien may be made specific through a levy by a collector or an authorized deputy collector of the internal revenue upon the debtor's specific property. United States Revised Statutes §3207, otherwise known as Title 26, §1568 U.S.R.S., provides enforcement of the tax lien against the real estate of the debtor through the filing of a bill in chancery, the service of notice on interested parties, the adjudication of priorities and the rendition of a decree fixing priorities and ordering the distribution of the proceeds.

The form of the notice of lien required by §5506 GC is not specified in said section, although by necessary implication the amount of the lien and the name of the debtor corporation are fundamentally essential. By comparison, §11656 GC, providing for the filing of certificates of judgments to operate as liens upon the lands and tenements of judgment debtors, requires much more specific and definite information concerning the judgment indebtedness than does §5506 GC with reference to franchise tax indebtedness.

In any event, the franchise tax lien of the State of Ohio, subject to specific exceptions in favor of mortgagees, pledgees, purchasers, or judgment creditors whose rights have attached, is not a lien of any higher grade or degree, so far as its political, constitutional, economic and legal justification is concerned, than that of the United States for income tax, which is subject to precisely the same exceptions in favor of mortgagees, etc., under §3186 U.S.R.S.

In determining the character and grade of these liens it must be kept in mind that an income tax claim against an insolvent debtor is a debt owing the United States under §3466 U.S.R.S., which must be first paid out of the debtor's property. The fact that there is an apparent similarity or equality in the character or grade of the income tax and franchise tax liens, particularly insofar as both make the same exceptions as regards mortgagees, etc., in no wise affects or detracts from the force of the priority provision of §3466 U.S.R.S. in favor of the United States, which is independent of §3186 U.S.R.S. governing income tax liens. The only exceptions to the literal application of the language of §3466 U.S.R.S. were those engrafted thereon by the Supreme Court of the United States in Thelusson v Smith and Conard v Atlantic Insurance Co., supra, and subsequent cases following the same rule.

All cases which have preferred the income tax lien of the United States to the corporation franchise tax lien or other tax claim of a state, expressly or ██ by necessary inference from the facts, require more to be done than the determination and assessment of the amount of the franchise tax and the filing of a lien notice of record, to make such franchise tax lien specific within the meaning of the Supreme Court decisions in Thelusson v Smith and Conard v Atlantic Insurance Co., supra.

New York v McClay, supra.

Gerson, Beesley & Hampton, Inc. v Shubert Theatre Corporation et, supra.

Spokane County v United States, supra.

It should be mentioned in passing that several of the cases cited by counsel for the State of Ohio as authority for the proposition that the tax claim of a state or subdivision thereof should be given priority over income tax claims of the United States, do not apply to the instant case for the reasons that §3466 U.S.R.S., giving the United States priority was not applicable to the facts of those cases or that a seizure or distraint of the property by the state authority making the state tax lien specific was effected before the receiver was appointed. §3466 R.S. did not apply to the cases of

City of Winston-Salem v Powell Paving Co., 7 Fed. Suppl. 424.

Ferris v Chic-Mint Gum Co., 14 Del. Chancery Reports, 232.

United States v City of Oklahoma, supra.

To further determine the legislative intent, both inherent and cumulative, to create a general or specific lien, in the enactment of the Ohio and federal statutes herein set forth, we will refer to the ordinary lay understanding of the word "specific" as defined by Webster's New International Dictionary, to-wit:

"Precisely formulated or restricted."

"Specifying."

"Definite or making definite."

"Explicit."

"Of an exact or particular nature, as, a specific statement."

When the word "lien" was used in §5506, GC and §3186 U.S.R.S., neither the state legislature nor the congress intended to

use the word as ordinarily understood and defined at common law for the reason that both franchise and income tax liens are general charging liens against all of the property of the debtor, regardless of amount, no particular property being specified. Such liens were not intended to be specific (particular) for the reason that the amount, description, and location of the debtor's property necessary to satisfy the lien had not been ascertained and for the further reason that no particular property had been possessed, set aside, or conveyed to guarantee the satisfaction of the lien claim. Most general and specific (particular) liens at common law were "specific" in the sense used in this decision. The statutory franchise and income tax liens discussed herein are not specific in the sense that common law liens are specific, and are general in another sense than that used at common law.

It seems then to be approximately accurate to state that as long as statutory liens lack most of the distinguishing characteristics of common law liens, they may be said to be general. When they take on many of those characteristics they may be said to be specific, although they never become specific through the contract of the parties or common usage as at common law. The general definition of "lien" as given in Black's Law Dictionary, 2 ed., seems to indicate, as do other general definitions, that the commonly accepted concept of a lien requires that it be "specific" in the sense adopted by the discussion quoted herein. It defines "lien" as—

"A qualified right of property which a creditor has in or over specific property of his debtor as security for a debt or charge, or for performance of some act."

Consequently, it follows that neither the legislature of the State of Ohio nor the congress of the United States intended their respective statutes providing for the assessment of franchise and income taxes and the filing of liens or notices of lien therefor to have the effect of making such liens specific and operative against specific property, but both legislative bodies recognized the necessity of providing further specific procedure to make their respective liens specific, perfect, and complete.

Afer careful consideration, we are of the opinion that neither the State of Ohio nor the United States at any time prior to the appointment of the receiver herein,

took the steps required by law to make their respective liens specific. A lien is or becomes specific because it arises out of or is intimately and closely connected with or related to specifically described property, due to services rendered thereon or to money loaned on the security thereof. Of if a general lien or claim in favor of a public or private person against another has been reduced to judgment or its statutory equivalent, it may become specific by its enforcement through seizure on execution, distraint, warrant, or other process. A specific lien is characterized either by an accomplished change in title or possession of the specific property charged, pending the satisfaction of the liens claim, or a perfected legal right to produce such change in specific property to satisfy the lien claim. The lien rights of Ohio and the United States, or their rights to charge and collect their tax claims in preference to other claims, were not "jus in re" as to all or any particular part or class of defendant's property referred to in the state and federal statutes, but were inchoate, incomplete, imperfect, and general rights which could thereafter be converted into specific "jus in re" by following the further steps provided by state and federal statutes to make their liens perfect, complete, effectual, and specific. One of the most ingenious and reasonable criteria as to whether a lien is specific, suggested by Justice Story in Conard v Atlantic Insurance Co., supra, is whether or not the proceeds of the sale of the property subject to lien can be followed by the lien claimant and taken in satisfaction of the lien.

In short, it is our conclusion that a specific lien as generally understood by the courts is a complete and perfect lien so closely and intimately attached to specific property that nothing more can or need be done, as a matter of law, to specify the property or subject it to the satisfaction of the lien claim except the sale thereof.

The court can come to no other conclusion than that the United States is entitled to a preference over the State of Ohio and Montgomery County on their respective tax claims.

In view of the fact that when all the assets of the defendant are liquidated the receiver will have on hand insufficient money to pay in full the income tax lien of the United States, the court will order that all funds on hand after court costs

282

and costs of administration are paid shall be paid to the Internal Revenue Department of the United States or its legal representatives toward the satisfaction of its income tax lien. An order may be drawn accordingly.