[No. 28616. *En Banc.* October 21, 1942.]

SPOKANE MERCHANTS' ASSOCIATION, *Plaintiff*, v. THE STATE OF WASHINGTON *et al., Respondents,* THE UNITED STATES OF AMERICA, *Appellant.*[1]

[1] Reported in 130 P. (2d) 373.

*Lyle Keith, Edward M. Connelly, Harvey Erickson, Thomas R. Winter, Samuel O. Clark, Jr., J. Louis Monarch, Robert R. Reynolds, Jr.,* and *Clarence E. Dawson,* for appellant.

*The Attorney General, Rudolph Naccarato,* and *Harry L. Parr, Assistants (Lawrence W. Thayer,* of counsel), for respondents.

BLAKE, J.—This appeal presents a controversy between the United States and the state as to the priority of payment of certain claims for excise taxes out of the assets of an insolvent partnership.

January 4, 1938, J. A. Westland and Martin Westland, copartners, doing business as Hillyard Bakery, made an assignment to the Spokane Merchants' Association for the benefit of creditors. The assignee took possession and disposed of all of the assets of the insolvents. After the payment of expenses of operation and administration, it had left $771.29, which, upon an interpleader, it deposited in the registry of the superior court. The state had claims against the insolvents for excise taxes in something less than that amount, and the United States had claims much in excess of it. The lower court awarded the state priority, in the amount of $302.85, for occupation taxes assessed pursuant to Rem. Rev. Stat. (Sup.), § 8370-202 [P. C. § 7030-262]. The United States appeals.

 The claim of the United States to priority rests upon R. S., § 3466 (31 U. S. C. A., § 191), which, so far as pertinent, provides:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall ex-

tend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, . . . ."

The word "debts," as used in the statute, includes taxes due the United States. *Price v. United States,* 269 U. S. 492, 70 L. Ed. 373, 46 S. Ct. 180. The priority created is effective as of the date of the assignment of assets by the taxpayer, and it "cannot be impaired or superseded by state law" (*United States v. Oklahoma,* 261 U. S. 253, 260, 67 L. Ed. 638, 43 S. Ct. 295), for it rests upon "the supremacy of the laws of the United States on all subjects to which the legislative power of congress extends." *United States v. Fisher,* 2 Cranch (6 U. S.) 358, 397, 2 L. Ed. 304. The priority, however, has been held subordinate to a mortgage lien (*Conard v. Atlantic Ins. Co.,* 1 Peters (26 U. S.) 386, 7 L. Ed. 189) on the "theory that mortgaged property passes to the mortgagee and is no longer a part of the estate of the mortgagor." *United States v. Texas,* 314 U. S. 480, 485, 86 L. Ed. 356, 62 S. Ct. 350. But the priority created is superior to an inchoate general lien. *United States v. Knott,* 298 U. S. 544, 80 L. Ed. 1321, 56 S. Ct. 902.

It has been definitely held that a general judgment is subordinate to the priority claim of the United States unless execution of the judgment has proceeded far enough to take the land out of the possession of the debtor. *Thelusson v. Smith,* 2 Wheat. (15 U. S.) 396, 4 L. Ed. 271. In recent cases involving controversies between the United States and states over priority of claims for taxes, it has been held that the right of the United States is superior under R. S., § 3466 (31 U. S. C. A., § 191), unless the state taxes have become a specific lien prior to the insolvency of the debtor. *Spokane County v. United States,* 279 U. S. 80, 73 L. Ed. 621, 49 S. Ct. 321; *New York v. Maclay,* 288 U. S. 290, 77 L. Ed. 754, 53 S. Ct. 323; *United States v. Texas, supra.* In-

herent in these decisions is the principle that a mere statutory declaration by the state does not create a specific lien.

Upon the principle laid down in the cases just cited, we held, in *Ernst v. Guarantee Millwork*, 200 Wash. 195, 93 P. (2d) 404, that taxes assessed upon personal property created a specific lien which was superior to a claim of the United States, under R. S., § 3466, for priority payment of social security and income taxes.

So, the question to be determined is whether the state, prior to insolvency, acquired a specific lien upon the property of the assignors, J. A. and Martin Westland.

The state claims such lien by virtue of three warrants issued by the state tax commission, pursuant to Rem. Rev. Stat. (Sup.), § 8370-202, and filed with the clerk of Spokane county prior to the assignment by the Westlands to the Spokane Merchants' Association. That section provides that, if any tax imposed by the act (chapter 180, Laws of 1935, p. 839, § 202, as amended by chapter 227, Laws of 1937, p. 1162, § 20) be not paid within fifteen days after it becomes due, the tax commission shall issue a warrant to the sheriff, commanding him to "levy upon and sell the real and/or personal property of the taxpayer . . . or so much thereof as may be necessary, for the payment of the amount of such warrant, . . ."

It is further provided that the sheriff shall, within thirty days, file a copy of such warrant with the clerk of the superior court, who shall enter it in the judgment docket,

" . . . and thereupon the amount of such warrant so docketed shall become a lien, prior to all other liens . . . upon all goods, wares, merchandise, fixtures, equipment or other personal property used in the

conduct of the business of the taxpayer. . . . The amount of such warrant so docketed shall become a lien upon the title to and interest in real and personal property of the taxpayer . . . *and shall be the same as a judgment in a civil case duly docketed in the office of such clerk, and the sheriff shall thereupon proceed upon the same in all respects and with like effect as prescribed by law with respect to executions or other process issued against rights or property upon judgments of said superior court.*" (Italics ours.)

No attempt was made to levy upon or distrain any property of the taxpayers (Westlands) either before or after the assignment. They continued in title and possession until they made the assignment to the Spokane Merchants' Association. The latter took possession, and disposed of the property without let or hindrance on the part of the sheriff or the taxing officers. Aside from filing the warrants, the state took no steps to make its lien specific until it laid claim to the proceeds from the sale of the insolvents' assets. In the meantime, the priority right of the United States had attached under R. S., § 3466 (31 U. S. C. A., § 191).

Under the plain terms of Rem. Rev. Stat. (Sup.), § 8370-202, the state, by merely filing the warrants, acquired only an inchoate general lien—the equivalent of a judgment lien which can become specific only by distraint or levy of execution. Such a lien cannot defeat the priority right of the United States under R. S., § 3466 (31 U. S. C. A., § 191). *Thelusson v. Smith, supra.*

We think the most recent decision of the supreme court of the United States impels this conclusion: *United States v. Texas, supra.* The court there had before it a statute declaring a lien upon the property of the taxpayer in substantially the same terms as Rem. Rev. Stat. (Sup.), § 8370-202—albeit no warrant or like process had been issued as in the instant case. Never-

theless, we think what the court said in that case, pp. 485, 487, is equally pertinent to this:

"In more recent years the Court has had occasion to consider the argument that liens created in favor of states or counties by state statutes entitled them to priority over the United States under § 3466. In *Spokane County v. United States,* 279 U. S. 80, the priority of the United States was upheld. The state statutes involved provided that if a certain personal property tax was not paid, and if the personal property against which it had been assessed was no longer in the hands of the delinquent taxpayer, the amount of the unpaid tax should become a lien upon all the real and personal property of the taxpayer. They went on to prescribe the procedure by which the lien was to be enforced. The Court determined that the statutory lien did not become specific until this procedure had been followed. Since these procedural conditions had not been satisfied in the case before it, the Court refused priority to the tax claims of the county. It specifically declined to consider what 'the effect of more completed procedure in the perfecting of the liens under the law of the State' would have been. 279 U. S. at 95.

"As to the nature of the proper procedure for *levy, seizure, and sale,* it is enough to say that some procedure is essential. As we have indicated, the statutory scheme reveals that the legislature contemplated resort *to the courts.* In addition to the statutory provisions referred to above, Article 7065a-8 (e) regulates the pleadings in suits by the Attorney General to collect the tax, and Article 7065a-9 determines the venue of such suits. Consequently, while it was clearly intended by Article 7065a-7 to create a lien in favor of the state, we must conclude that of necessity it was nothing more than an *inchoate* and *general* lien. Certainly it did not of its own force divest the taxpayer of either *title* or *possession.* It could not become specific until the exact amount of the *taxes* due had been determined, and it could not be enforced without the assistance of the *courts.* Like the tax lien in *New York v. Maclay, supra,* it served 'merely as a *caveat* of a

more perfect lien to come.' 288 U. S. at 294." (Italics ours.)

In the light of that decision, it is clear that the issuance and filing of the warrants could not make the liens specific unless they be followed by procedure *"in all respects . . . as prescribed by law with respect to executions or other process issued against rights or property upon judgments. . . . "* (Italics ours.) Rem. Rev. Stat. (Sup.), § 8370-202. Like the lien in the *Maclay* case, they served "merely as a *caveat* of a more perfect lien to come."

The judgment is reversed, and the cause is remanded with direction to enter judgment accordingly.

ROBINSON, C. J., BEALS, MILLARD, STEINERT, and DRIVER, JJ., concur.

SIMPSON, J. (dissenting)—In my opinion, the state acquired, by its proceedings in this case under the provisions of Rem. Rev. Stat., § 8370-202 (Laws of 1937, chapter 227, p. 1162, § 20), a specific lien upon the property of the taxpayer, and for that reason its lien was prior to the claim of the United States. The judgment of the trial court should be affirmed.

JEFFERS, J., concurs with SIMPSON, J.