CO-OPERATIVE TRANSIT CO v
BELLAIRE-SOUTHWESTERN TRAC CO

CO-OPERATIVE TRANSIT CO v.
WHEELING & WESTERN RY CO

CO-OPERATIVE TRANSIT CO v
STEUBENVILLE & WHEELING
TRACTION CO

Common Pleas Court, Belmont Co.

Nos. 3999, 4000 & 4001

Decided August 22, 1939

Gordon D. Kinder, Martins Ferry, for Receiver.

Hall, Goodwin & Paul, Wheeling, W. Va., for bondholders.

Ross Michener, Prosecuting Attorney, for Belmont County.

Hugo Alexander, Prosecuting Attorney, for Jefferson County.

## OPINION

By BELT, J.

The defendants in the three above entitled cases are in receivership, actions having been brought seeking dissolution of the corporations and for the appointment of receivers under the statutes pertaining thereto.

Cross petitions were filed by Wheeling Dollar Savings & Trust Company, as trustee for the bond holders under trust deeds, and under an amendment of the cross petitions the question of the liens and priority thereof of certain taxes are sought to be determined. The Treasurers of Belmont and Jefferson Counties have been made parties defendant.

The properties owned by the defendant companies are encumbered by deeds of trust.

An agreed statement of fact has been submitted in all the cases. In case number 3999 it is stipulated that the defendant owns a line of railroad extending from Pinch Run in the City of Bellaire on and over State Route No. 7 to the Village of Shadyside, a distance of two and two-tenths miles, a part of which is in the Village of Shadyside, part in the County of Belmont between the City of Bellaire and the Village of Shadyside, and the remainder in the City of Bellaire.

It is further stipulated that the lands described as parcels 5, 6 and 7 used as right of way have never been fenced and its use by the defendant differs in no way from the use of the public highway. Parcel 9 has at no time been used as a part of the street and interurban railroad system and the company owns the same in fee simple.

The books of the Treasurer of Belmont County show unpaid public utility taxes owing by said company in a substantial sum.

In case number 4000 the lines of the interurban railway are all in Belmont County, the east end of which is about 4200 feet west of the west corporation line of the Village of Brookside and extends from there a distance of 14871.26 feet to Blaine, Ohio, and from there in a general western direction 19829.7 feet

to Barton, Ohio. The various tracts of land described are used for railroad right of way purposes, switches and sidings, some of which is owned in fee simple, other parts by easements for right of way. Tracts 4 and 6 are not used for railroad operations.

The books of the Treasurer of Belmont County show the defendant to be in default for public utility taxes in a substantial sum.

In case number 4001 the railroad right of way extends from a point a short distance north of the north corporation line of the City of Martins Ferry to Gaylord viaduct and from thence to the town of Rayland in Jefferson County; thence to Brilliant, and from thence to Mingo Junction, and from thence to Third and Adams Streets in the City of Steubenville. A part of the right of way of this line is along the public highway, a part on city streets and a part is held in fee simple. Small portions of the lands are not used for railway operations purposes.

This company is in default for some real estate taxes and utility taxes in both counties amounting in the aggregate to substantial sums.

The question presented by the pleadings is whether or not all of the properties of the three companies as enumerated is subject to a lien for the public utility tax. Franchise and excise taxes which are specifically made a lien on the property of the utility are not involved.

There are three different kinds of property involved: first, that located in streets or highways and operated as street and interurban railroads under franchise; second, interurban railroad rights of way which are held partly under fee simple deeds and partly under right of way deeds by virtue of easements acquired in appropriation proceedings; third, real estate that is not used in street or interurban railroad operations.

According to the agreed statements of facts tract two of parcel one in case number 4001, tract 33 of parcel one and tract two of parcel three in the same

case have real estate taxes charged against such parcels. These parcels have been used exclusively in railway operations and are not subject to real estate taxes as such.

Sec. 5419, GC, provides, in substance, that the property owned or operated by a public utility required to make return to the commission of its property to be assessed for taxation shall be deemed and held to include the plant or plants and all real estate necessary to the daily operation of the public utility and all other property owned or operated, or both, by it, wholly or part within this state, used in connection with or as incidental to the operation of the public utility. This would seem to exclude the property just mentoned from real estate taxes as the same are commonly known. The finding of the Court is that such taxes on the parcels specifically mentioned are erroneously assessed, amounting in the aggregate to $21.65.

Coming now to the question of the validity of the other taxes charged as shown by the agreed statement of facts, it will be noted that the deeds of trust cover all of the property, real and personal, then owned or that may thereafter be acquired. That is to say, the trust mortgage covers not only all of the property of the defendant companies, real, personal and mixed, but all after-acquired property. It is conceded that all of these companies are insolvent and that the trust mortgages will not be paid in full, regardless of what disposition is made by the Court as to the taxes in question here.

The property in case number 4001 has already been sold and in cases numbered 3999 and 4000 has not been sold.

The law providing for the return of property for taxation by public utilities is somewhat complicated, provision being made therefor by §5419 and following sections to and including §5422, GC. Under these sections on the second Monday of June each year the commission shall assess at its true value in money all the property of such utility in this state. It is further provided by

§5430, GC, that the value of such property, in cases of railroads, shall be apportioned by the tax commission among the several counties through which the road or any part thereof runs to the end that each county and each taxing district therein shall be apportioned such part of the tax as will equalize the relative value of the real estate, structures and stationary personal property of such company therein, in proportion to the whole value of such property and to the end that the rolling stock, main track, road bed, power houses, poles, wires and supplies shall be apportioned in like proportion as the length of the road in such county bears to the entire length in all the counties and to each city, village and district, or part thereof, therein. It is further provided that each kind of property mentioned in §5328-1, GC, which is separately taxed shall be so separately assessed according to the rules set out in §5388, GC.

The reason for these provisions of the statute is to seek and obtain uniformity in the various taxing districts of the state, the property being of such a nature that it would be somewhat difficult for the various taxing districts to ascertain valuations thereof.

It is claimed by counsel representing the trustee that there is no lien on the real estate in favor of this utility tax; in other words, that the utility tax is not a tax on real estate specifically as such; citing §2321, GC, now repealed, which specifically provided that the terms "personal tax" and "tax on personal property" as so used, include all taxes excepting only the tax upon real estate specifically as such. It is further claimed that the lien, if any, of the utility tax is subordinate to trust mortgages. Counsel for the taxing districts take the contrary view.

**Sec. 8623-88, GC,** provides for the legal dissolution of corporations and the appointment of receivers. Pending the hearing the Court or Judge in vacation may appoint a receiver and make such further orders as may be required to protect the property and the rights of all persons interested. **Sec. 8623-96** in

the same chapter provides that "if after the hearing the Court find that the corporation should be dissolved" an order for such dissolution shall be entered but that no partial or final distribution of the assets shall be ordered or made unless and until the Court shall cause assets to be set aside and reserved for the purpose of paying all fees and taxes, excepting real estate taxes, due and payable to the state and every city, county or subdivision thereof to the extent of the assets available for that purpose, or it shall cause security to be taken for the payment of all such fees and taxes that the Court shall determine to be valid, due and payable.

**Sec. 5671, GC,** provides that the lien of the state for taxes shall attach to all real property subject to such taxes on the day preceding the second Monday of April annually and continue until paid, and that all personal property subject to taxation shall be liable to be seized and sold; that taxes charged on any duplicate, other than those on real estate specifically as such, shall be a lien on the real property from the date of the filing of notice of such lien as provided by law. That is to say, that all personal property becomes liable to be seized and sold as of the day preceding the second Monday of April annually.

**Sec. 9066, GC,** provides that the earnings of a railroad company in the hands of a receiver and all other money which comes into his hands shall be applied, first, to pay the costs and expenses of the suit in which he was appointed and the expense of operating and managing the road, including materials and supplies and liabilities incurred by him in such operation and management; judgments recovered against the receiver; wages of employees for work done or materials furnished, all of which shall be a lien in the order stated on the funds in his hands as receiver.

It has been held by the Supreme Court in the case of **Treasurer v Dale, 60 Oh St 180,** that the Treasurer of a county may have a rule against the receiver of every railroad for the pay-

ment of taxes due and unpaid for the reason that the state is not included in §9066, GC, and for this reason the superiority of its claim is not affected thereby. In other words, the Supreme Court says in effect that in cases of railroads in the hands of a receiver, even though it be insolvent and unable to pay all of its claims in full, the tax claim is a superior claim and takes precedence over all others.

In the case of **Skiles v Leary, Receiver,** a case reported without opinion, found in **90 Oh St 460,** the Supreme Court holds, in reversing the Circuit Court, that railroad scales and tracks are not personal property but real estate. The conclusion of the Court then is that while the utility tax is not a tax against real estate specifically as such but that the valuation on which the tax in part is levied is real estate valuation and to such extent is really a tax on the assessed value of real estate.

In the cases at bar substantially all the valuation on which the utility tax was based is real estate owned in fee or by easement, including the tracks, switches and other improvements consisting of rights of way and road beds.

A number of cases have been cited on the subject of preference involving personal property taxes, including in such class of cases the following:

Touzalin Agency Co. v The Dick Manufacturing Co., 30 N. P. (N.S.) 139, in which the Court discusses the question of prerogative right and in which he arrives at the conclusion that such right does not exist in this state under the common law applicable to Ohio.

**Citizens Bank Assignment, 2 O. D. (Reprint) 230,** in which it is held that the personal property of an assignor in the hands of the assignee is not liable for taxes assessed upon it prior to the assignment.

**Ohio Casualty Insurance Co. v Freshwater Construction Co. et, 32 N. P. (N.S.) 464,** wherein the Court held that delinquent personal property taxes are not entitled to payment by a receiver out of the proceeds of mortgaged chattels in preference to a claim of the

mortgagee after condition broken on the theory of common law prerogative of sovereign. It was held in substance in that case that after the condition was broken a specific lien attached to the property for the payment of the mortgage; that there being no statute making personal taxes a lien and that in the absence of a paramount right on the part of the state as an incident of governmental sovereignty the taxes are not a preferred claim.

**Eick v McDonald, 8 O. D. 675** holds that taxes on personal property are not a lien upon the property or fund in the hands of receivers against mortgagees or lien holders.

As against this array of authority we have the following cases which seem to hold contrary:

Coy v Title Guaranty & Trust Co., 220 Fed. Rep. 90, which holds that property in the hands of a receiver is subject to state and municipal taxation, whether under the laws of the government assessing the tax it is a lien or a debt; it being nevertheless enforcible in receivership proceedings as a preferred and paramount claim. The Court say:

"We regard it as wholly unimportant that under the laws of Oregon taxes levied on personal property do not constitute a lien thereon nor a debt. The statutes of that state do declare the personal property of every individual liable to taxation, and that like property of every private corporation is likewise liable, and shall be assessed in the name of such corporation."

"It is too clear for argument that the appointment of a receiver and the taking of property into the hands of the Court through its officer does not withdraw it from taxation. It remains subject to assessment and to the payment of all legal taxes thereon while in custodia legis, to the same extent as it was while in the possession of the owner. And whether or not such taxes be a lien or a debt by the laws of the government within whose jurisdiction the property is situated, such taxes are

and should be regarded by the courts as a preferred and paramount claim over all other claims, for they are essential to the existence and maintenance of the very government under which the property is acquired and protected."

Quoting Cooley on Taxation, 3rd Edition, Vol. 2, page 834:

"A Court having in its charge or under its control a fund or other property upon which taxes are due, will, as the representative of the sovereignty, direct them to be paid without raising any question of the means of enforcement by process, and before all other claims except judicial costs."

See also Bear River Paper & Bag Co. v City of Petroskey, 241 Fed. Rep. 53.

Judge Brandeis discusses this question in the case of H. Snowden Marshall v People of the State of New York, (Supreme Court), 65 Law Ed 315. The Court says that the right of priority has been likened to an equitable lien and arises independently of any statute.

The case of **Clegg v Dayton & Troy Electric Railway Co.**, found in **31 N. P. 37**, holds that in the case of taxes and assessments, some of which were partially due and payable before the appointment of the receiver, that the property is subject to the payment of all legal taxes, regardless of the inability of the revenue officers to enforce the state's paramount right by summary process of distress and that they constitute a preferred claim upon funds in the hands of the receiver before distribution is made to other creditors. In this case there was a mortgage.

The case of **Steele v Elthor Drug Co.**, found in **15 Abs 21**, holds that personal property taxes assessed against the company prior to the appointment of a receiver therefor take priority under §§8339 and 11138, GC, over labor claims.

The Court in the case of **Reese v Progressive Tool & Engineering Co.**, found in **25 Abs 273**, discusses the question of tax priority, holding that unpaid personal property taxes accruing prior

to appointment of a receiver after filed for record as required by §5694, GC, stands on a parity with a claim of the Industrial Commission and both claims are deferred to the claim of the State Tax Commission for unpaid corporate franchise taxes for which a specific lien is provided.

In the case of **Commercial Mortgage Co. v Syfert, 24 N. P. (N.S.) 157,** the Court holds that taxes and penalties on personal property in the hands of a receiver or assignee have priority over the claims of all classes of creditors. The Court in that case discusses the sovereignty theory. He points out that there is not now in Ohio, neither is there in New York, any express constitutional or statutory adoption of the common law but that insofar as it is adapted to our institutions and circumstances the common law is applicable to the affairs of this state and that the common law prerogative of the sovereign should be of value at least in interpreting our statutes on the subject of personal taxes and supply light if the statutory provisions are incomplete or lacking in clearness. He argues that if labor claims are preferred over all claims except claims for taxes then claims for taxes are of necessity also preferred claims, holding that the clear inference is that the legislature recognized the common law prerogative or its equivalent. He cites the case of In re Laird, 109 Fed. 550, decided by Judge Day, in which he says:

"This being the object and purpose of the statute, it seems to us tantamount to charging upon such funds a specific lien in favor of this class of creditors. Persons who deal with an employer after the passage of this statute must be held to know that, in case the property is placed in the hands of an assignee or receiver, the resulting fund from the administration of such trust shall first be subjected to the payment of such liens. Such a charge is in fact a lien."

"The priority is plainly implied in the language of the statute and has the same force and effect as if it had been

expressed in unequivocal language." Doyle v Doyle, 50 Oh St 330. Cincinnati v Oliver, 31 Oh St 377.

"Delinquent taxes and penalties are payable out of the funds arising from the judicial sale of the railroad and other property of an insolvent railroad corporation, although the same become due and payable before the Court acquired jurisdiction of the property sold, as against the rights of a mortgagee, under mortgage antedating the levy of the taxes." Creech et v P. A. & W. R. R. Co., 3 O. D. 265; 2 N. P. 164.

The Court say:

"The power of taxation is indispensible to the existence of any government. It is so fundamental that no government worthy of the name ever existed without it. Our state constitution makes it mandatory upon the law making power that laws shall be passed taxing by a uniform rule all monies, credits, investments in bonds, stocks, joint stock companies or otherwise; and also all real and personal property according to its true value in money. Thus by constitutional provision property and not the person of the owner is taxed."

"The power to levy and collect the tax overshadows all such property within the state no matter by whom or how owned. It is the property not the owner that is taxed. The incident of ownership may be wholly immaterial so the property itself be within the jurisdictional power of the state. It matters not whether the property be in the hands of its real owner or of that of his agent, trustee, or in the hands of a tort feasor; or whether the owner be under legal disability or not;—insanity, coverture or mental incapacity, even death itself, can interpose no bar to the exercise of this prerogative of the state, and a failure to pay the tax in any such cases leaves the property taxed liable."

"The rights of lien holders whatever they be are not exempt from the paramount rights of the state. Nor does it make any difference whether the property subject to taxation is real or personal."

"As to railroad property the method of appraising and assessing is the same as to both, and both are included in the same appraisal; so that no matter what legal distinction may be imagined to exist when real or personal property is considered these distinctions fade away in the judicial determination of this case."

"The priority or superiority of equities between debtor and creditor or between different creditors or lien holders, furnish no criterion by which the rights of the sovereign power of the state may be adjudged. If so, then private arrangements of the parties might nullify the tax laws and defy this indispensable power of the state."

Other cases might be cited but sufficient authority has been mentioned to demonstrate the irreconcilability of the two theories, the one recognizing the sovereign right under all circumstances, the other refusing such a theory as to personal taxes.

In the case at bar the assets in the hands of the receiver, other than such assets as were realized from operation, represent the proceeds of the sale of real estate, and particularly is that true in case number 4001. In the other two cases the tracks and right of way have not yet been sold. A small amount of the fund, but a very small amount, constitute proceeds of the sale of personal property. These companies were not operating companies. Their properties were operated under agreements therefor by the plaintiff in this action.

The taxes assessed have been determined by the counties involved as not only **valid taxes but taxes due and payable** as provided by §8623-96, GC. In any view of these cases, while the taxes were not assessed in the ordinary way upon real estate, yet the bulk of the property from which the fund was derived in case number 4001 was real estate and real estate constitutes the bulk of the assets in the other cases. The real question is: Was the property properly assessed for taxation and has the

tax been paid?

If the claim of the trustee is correct in these cases, then the tax laws as applied to an insolvent corporation are nullified from the time a deed of trust is executed and delivered and the state from that time on is powerless to collect its taxes for the reason that when the lien of the trust deed attaches the power of the state to distrain would be gone and there would be no way to collect without making the mortgagee a party and working out the equities in a suit to marshall liens. The Court has not found a railroad case where it has been held that the tax claim was inferior to the claim of a mortgagee and such holding in these cases would be particularly unfair and inequitable for the reason that real estate is responsible for the funds from which the taxes must be paid, and, as said in the Creech case, ante, "if the mortgage lien of the trustees were to be recognized as superior to the rights of the state to this fund it would in effect be the abdication of the state insofar as its prerogative of taxation is concerned;—an inconsistency and negation of sovereignty on the part of the state not to be presumed, or encouraged by the courts", and, as said by Judge Brandeis in the case of Marshall v People of the State of New York, "whether the priority arises by prerogative right or by a rule of administration is a matter of local law".

These taxes were certified to the County Recorder for a lien. There is no question raised as to any failure of the taxing authorities to comply with the statutes in levying and certifying this tax. As has been before suggested, the remedy of distraint was impossible. The conclusion is that the tax is valid.

It is a matter of common knowledge that there is perhaps not a railroad company, steam, urban or interurban, in Ohio free from mortgage liens. If the public utility tax does not have priority the law providing for taxes on that class of property would be unenforcible and the effect would be to withdraw such property from taxation. When the legislature provides by

proper enactment of law for the assessment and collection of a tax the power to collect, if not given expressly, must be implied, and, as said in the case of **Doyle v Doyle, Jr., et, 50 Oh St 330,** "that which is plainly implied in the language of a statute is as much a part of it as that which is expressed". Whether this power to collect is a matter of prerogative right or rule of administration is immaterial. However, in that connection the Court expresses the opinion that it rests on the theory of prerogative right.

The Supreme Court has already decided in the case of Treasurer v Dale, ante, that the treasurer is entitled to a rule against the receiver for the payment of taxes. If that be true the same rule most certainly should apply to a fund in the hands of a receiver. There are two funds in this case: one the proceeds of sale of the property hereinbefore discussed, the other a fund as a result of operation, either of which fund is sufficient to satisfy the taxes assessed against the defendant in case number 4001. So far as the right of the taxing districts are concerned the Court is unable to distinguish as between these funds, the right of the taxing districts attaching equally to each. However, if either fund should be held exempt from this charge the other is sufficient to pay the taxes in full.

The Court is of the opinion and so holds that the public utility taxes in the cases at bar are entitled to priority in payment from the funds in the hands of the receiver as against the bond holders under the trust mortgage. The receiver, therefore, is hereby directed to distribute the funds in his hands; first, to the costs of these cases, which include his own fee and the fees of his counsel as well as operating expenses; second, all taxes, assessments and penalties; third, the unsatisfied mortgages and other liens, if any; fourth, general creditors. An entry may be prepared in accordance with this decision.