**UNITED STATES of America**

v.

**CUTTING & TRIMMING, INC.,** Chittenden Trust Company of Burlington, Rainbow Children's Dress Co. of New York, and the State of Vermont.

**Civ. A. 3177.**

United States District Court
D. Vermont.

June 6, 1962.

952

Joseph F. Radigan, U. S. Atty., Rutland, Vt., and John G. Penn, Tax Division, U. S. Dept. of Justice, Washington, D. C., for plaintiff.

Lisman & Lisman, Burlington, Vt., and Halperin, Morris, Granett & Cowan, New York City, for defendant Cutting & Trimming, Inc.

George R. McKee, Burlington, Vt., for defendant Chittenden Trust Co. of Burlington, Vermont.

No appearance for defendant Rainbow Children's Dress Co. of New York.

Charles J. Adams, Atty. Gen., and Charles E. Gibson, Jr., Deputy Atty. Gen., of Montpelier, Vt., for defendant State of Vermont.

GIBSON, District Judge.

The United States, seeking to foreclose its tax liens, filed this action against the taxpayer, Cutting & Trimming, Inc. It named as party defendants, Chittenden Trust Company, Rainbow Children's Dress Co., and the State of Vermont. Defendant Rainbow Children's Dress Co. went out of business sometime in 1961, and has entered no appearance in this action. The background facts essential to this particular problem may be simply stated. Defendant, Chittenden Trust Company, has possession of the sum of $1,878.82, which was deposited with it by the defendant, Cutting & Trimming. To enforce its liens on this sum of money, the plaintiff has moved for judgment on the pleadings. That the plaintiff is entitled to the bank deposit is admitted by all of the defendants except the State of Vermont. The State of Vermont has opposed the motion insofar as it claims a prior right to a portion of the money held on deposit by the Trust Company, and in its answer to the complaint, the State has set up a prayer for a decree stating its prior right.

There is no dispute about the remaining facts. On October 21, 1958, the State of Vermont made an assessment and demand on defendant Cutting & Trimming for $1628.15 for state withholding taxes it then claimed due for the third quarter of 1958. The State filed notice of lien on October 30, 1958, pursuant to 32 V.S.A. Sec. 5765. The federal Commissioner of Internal Revenue made an assessment on the taxpayer, Cutting & Trimming, amounting to $5,365.96 on February 9, 1959. This assessment was for taxes arising in the year of 1958 under the Federal Unemployment Tax Act. Notice of lien was filed by the Commissioner on June 2, 1959, pursuant to 26 U.S.C.A. § 6323. There were other assessments and notices of lien by both the State and the United States, but it is not necessary to consider them here. It is necessary to note only that the first lien of the State of Vermont was filed in October of 1958, and the first lien of the federal government was filed in June of

1959. The priority of right to the money held by the Trust Company must be determined according to the relative priority of these liens.

Before examining the liens in question here, it should be noted that the State instituted a suit against Cutting & Trimming in a Vermont state court on May 21, 1959, joining the Chittenden Trust Company as trustee. Judgment for the State for the taxes owing by Cutting & Trimming was rendered on October 23, 1959. Realizing that it can claim no priority as a judgment creditor over the earlier lien of the United States the State now relies entirely on its status as a holder of a lien for taxes.

The record discloses no insolvency on the part of the taxpayer, Cutting & Trimming. The Federal Priority Statute, R.S. Sec. 3466, 31 U.S.C.A. § 191, therefore is not applicable here. The United States relies upon its position as holder of a lien created by Sec. 6321 of Title 26 U.S.C.A. This statute does not confer priority upon the federal liens so created. Sec. 6322 of the same title states when the lien shall arise, and how long it shall last. Sec. 6323 of the same title sets out the validity of the lien as it relates to certain classes of persons (none of which is applicable in this case), and the filing and notice requirements. The United States then has two

methods of enforcing the tax lien. Sections 6331–6344 of Title 26 U.S.C.A. provide for the seizure of property for collection of taxes. Section 6331 in particular refers to levy and distraint upon all property of the defaulting taxpayer on which, in one instance, there is a lien for the payment of taxes. The second enforcement method is found in Section 7403 of Title 26, U.S.C.A., which provides for enforcement of the lien by civil action. That provision is the basis for the action now before this Court.

The State of Vermont in turn relies upon its position as holder of a lien created by Section 5765 of Title 32, V.S.A. This statute is applicable only in cases of employers, and in connection with non-payment of withholding taxes. Otherwise, it is an identical state counterpart of the federal lien provisions in 26 U.S.C.A. §§ 6321, 6322 and 6323.[1] The state enforcement provision is also similar to that in the federal statutes. By reference to the Vermont chattel mortgage statute,[2] the tax lien foreclosure provision incorporates the remedy of either public sale by a public officer, or foreclosure by a bill in equity.

■ The determination of priority of the competing liens in this case is governed by federal law. United States v. Brosnan, 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960); Aquilino v. United

---

1. 32 V.S.A. Section 5765. Amount of withheld taxes as lien against employer.

"If any employer required to deduct and withhold a tax under section 5761 of this title neglects or refuses to pay the same after demand, the amount, including interest after such demand, together with any costs that may accrue in addition thereto, shall be a lien in favor of the state of Vermont upon all property and rights to property, whether real or personal, belonging to such employer. Such lien shall arise at the time the assessment and demand is made by the commissioner of taxes and shall continue until the liability for such sum, with interest and costs, is satisfied or becomes unenforceable. Such lien shall be valid as against any subsequent mortgagee, pledgee, purchaser or judgment creditor when notice of such lien and the sum due has been filed by the commissioner of taxes with

the clerk of the town or city in which the property subject to the lien is situated, or, in the case of an unorganized town, gore or grant, in the office of the clerk of the county wherein such property is situated. In the case of any prior mortgage on real or personal property so written as to secure a present debt and also future advances by the mortgagee to the mortgagor, the lien herein provided, when notice thereof has been filed in the proper clerk's office, shall be subject to such prior mortgage unless the commissioner of taxes also notifies the mortgagee of the recording of such lien in writing, in which case any indebtedness thereafter created from mortgagor to mortgagee shall be junior to the lien herein provided for."

2. V.S.A. Section 5767, the foreclosure provision, refers to Sections 1791–1797 of Title 9, V.S.A.

States, 363 U.S. 509, 80 S.Ct. 1277, 1285, 4 L.Ed.2d 1365, 1371 (1960). Further, the determination of this Court is to be guided by the principles outlined by the Supreme Court in United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954). Indeed, both the State and the United States rely entirely on the New Britain case. Thus it is important to examine that case carefully in connection with the matter at hand. An enlightening study of New Britain is found in an article by Professor Frank Kennedy[3] in which he examines the development of federal tax lien priority from Spokane County v. United States, 279 U.S. 80, 49 S.Ct. 321, 73 L.Ed. 621 (1929) to United States v. City of New Britain, supra. However, since that article was written, the Supreme Court has found the federal tax lien to be superior to competing liens in several cases.[4] This might well alter some conclusions gained from the article. No case has dealt with a tax lien as here asserted by the State of Vermont. These more recent cases, therefore do not alter this Court's conclusions about New Britain, as it particularly relates to the present action.

█ Statutory liens must be unquestionably complete to overcome the federal tax lien priority. This is most obvious in the cases just cited. The test established by the New Britain case, 347 U.S. at page 86, 74 S.Ct. at page 370, is that the "priority of each statutory lien contested here must depend on the time it attached to the property in question and became choate." Choate, as defined in Webster's New International Dictionary, 2nd Ed., 1952, means complete. It comes from the word inchoate, derivative of the Latin, *incohare*, which means to begin or to initiate. As used in connection with liens, as indicated by the rulings of the Supreme Court, it means that not only must a lien be more than initiated, it means that all steps must be taken that will insure that the lien will not be lost. In some cases, it has meant that the lienor must bring suit and obtain judgment. See particularly in this respect the dissent by Mr. Justice Douglas in United States v. White Bear Brewing Co., 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871 (1956). Another word is used in the New Britain case in connection with the requirements of a successfully competing lien, i. e. "perfected". Perfection in the sense used means that "there is nothing more to be done to have a choate lien—when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." United States v. City of New Britain, supra, 347 U.S. at page 84, 74 S.Ct. at page 369.

██ Here is the nub of the whole matter in this case. Of the federal tax lien created by Section 6321, the Supreme Court said in the New Britain case, again at 84, 74 S.Ct. at 369, "The federal tax liens are general and, in the sense above indicated, perfected." The Court referred to the use of the word perfected as set out above. There is no question that the federal tax lien is considered a choate and perfected lien upon all of the property of the taxpayer when properly filed according to Section 6323. And there is no question that the lien of the United States attached to the property of Cutting & Trimming, including the money deposited in the Chittenden Trust Company, at the time the assessment was made. The same must be true of the tax lien of the State of Vermont, as created and given force by identical statutory language. Compare Ersa, Inc. v. Dudley, 234 F.2d 178 (C.C.A.

---

3. Frank P. Kennedy: The Relative Priority of the Federal Government: The Pernicious Career of the Inchoate and General Lien. 63 Yale L.J. 905 (1954).

4. United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1955); United States v. Liverpool & London & Globe Ins. Co., 348 U.S. 215, 75 S.Ct. 247, 99 L. Ed. 268 (1955); United States v. Scovil, 348 U.S. 218, 75 S.Ct. 244, 99 L.Ed. 271 (1955); United States v. Colotta, 350 U.S. 808, 76 S.Ct. 82, 100 L.Ed. 725 (1955); United States v. White Bear Brewing Co., 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871 (1956); United States v. R. F. Ball Construction Co., 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510 (1958).

3rd Cir., 1956) where a Pennsylvania state tax lien was characterized by the Pennsylvania courts as not attaching to personal property until a writ of *fieri facias* was issued on a judgment entered on the lien. In that case, the federal tax lien prevailed where it was filed after the state tax lien was filed, but before the writ of *fieri facias* had been issued.

I cannot agree with the contention of the United States that the New Britain case establishes a requirement of specificity that defeats the State's lien in this case. While the terms "general" and "specific", and in particular the combination of "general and inchoate lien", are used by the courts in discussing competing liens,[5] this factor is not a controlling one here.[6]

Indeed the federal tax lien is a general lien, and this fact does not deprive it of validity or effectiveness. United States v. City of New Britain, supra; United States v. City of Greenville, 118 F.2d 963, 965 (C.C.A.4th Cir. 1941). Moreover, the factors that are significant to the tax liens in this case are stated by the Supreme Court in New Britain, and as set out above, are the factors of perfection and choateness, or completeness. These are the factors that are also discussed in the cases both before and after New Britain. In United States v. Security Trust & Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950), Mr. Justice Minton's opinion applies its attention to the contingencies involved with the competing attachment lien, and the fact that it was not perfected or complete. Essentially the same concern is revealed in the Acri, Scovil, and Liverpool & London cases, all of which relied upon the Security Trust case. See footnote 4, supra.

█ To proceed then, the amount of the State's lien is established; the State is identified as the lienor; and the property subject to the lien, even though it is personal property rather than realty, is identified. Further, nothing remains to be done except to enforce the lien. It is in no way contingent, nor a "caveat of a more perfect lien to come".[7] In many instances, the State has only to have a public sale of the property covered by its tax lien. If judicial assistance is sought, as by a bill in equity, there is no uncertainty as to the outcome of this method of enforcement which would raise any question of completeness.[8] In other words, we are not dealing here with a private creditor who holds a garnishment, attachment or similar statutory lien, and who may or may not be successful in necessary future litigation against his debtor. We are dealing with the competing tax liens of two sovereigns. The State of Vermont must secure adequate public revenue to sustain its public burdens, as must the United States. In order to secure public revenue, tax lien legislation has become necessary. The State is in no way prohibited from making use in its State statute of federal statutory language that has proved effective. The tax lien of the State, then, as created by this statutory language, is fully choate and perfected, as is the tax lien of the United States. Cf. Gower v. State Tax Commission, 207 Or. 288, 295 P.2d 162, 296 P.2d 239 (1956). To find otherwise would be giving the respective statutory provisions nothing less than a spurious construction and would create an unjustifiable double standard.

---

5. Mr. Justice Douglas uses this phrase in his dissent in White Bear Brewing Co. case, cited in note 4, supra.

6. That a lien is general rather than specific is particularly significant when it must compete with the tax lien in a situation where the insolvency priority statute is applicable. United States v. Gilbert Associates, Inc., 345 U.S. 361, 366, 73 S. Ct. 701, 97 L.Ed. 1071 (1953); cf. Mr.

Justice Whittaker's discussion in note 4 at page 252 in James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961).

7. United States v. Scovil, supra, 348 U.S. at 220, 75 S.Ct. at 246.

8. United States v. Acri, supra; United States v. Liverpool & London & Globe Ins. Co., supra.

The whole concept of the Vermont Graduated Income Tax Law was that such law should be based entirely on the Federal Internal Revenue Code. This was the recommendation that the Governor of Vermont made in his inaugural address in January, 1947. See Vermont Senate Journal Biennial Session 1947, pp. 709, 725. The bill that was passed by the Vermont Legislature and approved April 26, 1947 followed that basic concept completely. See No. 15 Public Acts 1947. Section 17 of that Act declared its purpose to be, in addition to that of raising revenue, to have the Vermont Graduated Income Tax Law conform as closely as may be with the Internal Revenue Code et al. Indeed, Chapter 151 of Title 32 V.S.A. entitled Income and Franchise Taxes, starts out with this same statement of purpose—that which was originally adopted in 1947.

The 1947 legislature did not see fit to follow the Governor's recommendation to institute a complete system of employers withholding of State Income taxes but this was adopted by the 1949 legislature. See Act #26, Public Acts of 1949, approved May 13, 1949. Thus, complete employers withholding has been part of the Vermont Income Tax law ever since. Then, in 1953, the Legislature of Vermont took another logical step. By Act #265 of Public Acts of 1953, approved June 4, 1953, it adopted the lien imposing provisions used by the State in its levy of October 21, 1958.

In passing this Act, as in all its other existing income tax laws, the legislature conformed as closely as may be with the Internal Revenue Code by using the exact language found in Sections 6321–6323 of the Internal Revenue Code—the sections that were used by the United States in imposing its lien of February 9, 1959.

To hold that the State cannot do what the United States can do under statutes using identical language simply doesn't make sense.

While the Supreme Court has been persistent in maintaining the protection and superiority of the tax liens of the federal government, its ruling in the New Britain case, in this Court's view, does not direct the result contended for here by the United States. The priority of these statutory liens is, then, "determined by another principle of law, namely, 'the first in time is the first in right.'" United States v. City of New Britain, supra, 347 U.S. at 85, 74 S.Ct. at 370; cf. Commercial Credit Corporation v. Schwartz, 130 F.Supp. 524 (D.C.Ark., 1955), and United States v. Williams, 139 F.Supp. 94 (D.C.N.Car., 1956). The lien of the State of Vermont was the first in time, it is therefore the first in right.

This lien is for taxes, as stated at the outset, in the amount of $1628.15. The State, therefore, has a right to receive that amount, plus interest from the date of assessment and demand, from the Chittenden Trust Company, to the extent of the funds held on deposit for Cutting & Trimming.

It is hereby Ordered that the Chittenden Trust Company disburse the money held by it on deposit for Cutting & Trimming, Inc., in the following manner:

1) Payment first shall be made to the State of Vermont in the amount of $1628.15.

2) Secondly, as far as possible, payment shall be made to the State of Vermont for interest on $1628.15, computed from October 21, 1958 to date.

3) Thirdly, as far as possible, payment of any balance shall be made to the United States of America.

It is further Ordered that upon such payment the Chittenden Trust Company shall then be released from all liability in this matter and is discharged as a defendant in this case.