UNITED STATES of America, Appellant,

v.

The STATE OF VERMONT, Cutting & Trimming, Inc., Chittenden Trust Company of Burlington, Rainbow Children's Dress Company of New York, Appellees.

No. 272, Docket 27779.

United States Court of Appeals Second Circuit.

Argued April 11, 1963.

Decided May 9, 1963.

Joseph Kovner, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Fred E. Youngman, Washington, D. C. (Joseph F. Radigan, U. S. Atty., John H. Carnahan, Asst. U. S. Atty., on brief), for United States of America.

Charles E. Gibson, Jr., Atty. Gen., Montpelier, Vt., for the State of Vermont.

Before MOORE, FRIENDLY and HAYS, Circuit Judges.

FRIENDLY, Circuit Judge.

This case raises a question in the vexed field of federal tax lien priority not squarely ruled by any of the numerous decisions of the Supreme Court. It involves a conflict between a state tax assessment, definite in amount, which became a lien on all of a taxpayer's property but did not relate to specific assets, and a later federal tax assessment with precisely the same attributes, in a situation to which the federal priority-in-insolvency statute, R.S. § 3466, now codified in 31 U.S.C. § 191, is not in terms applicable. The District Court for Vermont upheld the priority of the state tax lien, 206 F.Supp. 951. We agree.

The circumstances giving rise to the controversy are these:

The Vermont statutes provide, 32 V.S.A. § 5765, that if an employer who is required to deduct and withhold a tax from an employee's wages fails to pay the same after demand, "the amount, including interest after such demand, together with any costs that may accrue in addition thereto, shall be a lien in favor of the state of Vermont upon all property and rights to property, whether real or personal, belonging to such employer," and further that "Such lien shall arise at the time the assessment and demand is made by the commissioner of taxes and shall continue until the liability for such sum, with interest and costs, is satisfied or becomes unenforceable." The lien becomes valid "as against any subsequent mortgagee, pledgee, purchaser or judgment creditor" once notice is filed with the clerk of the town, city or, in some instances, county where the property is situated. On October 21, 1958, Vermont made an assessment and demand on Cutting & Trimming, Inc. for $1,628.15 for withholding taxes due for the third quarter of 1958; it filed notice of lien on October 30 with the city clerk of Burlington. On May 21, 1959, it instituted suit in a state court against Cutting & Trimming, Inc., and joined Chittenden Trust Co., a Burlington bank, as a defendant. In consequence of a writ served on May 25, Chittenden Trust Co. disclosed that it had in hand $1,278.82 owing to Cutting & Trimming plus another $600 previously attached by Rainbow Children's Dress Company. On October 23, 1959, judgment was entered for Vermont against Cutting & Trimming for $4,049.22—this including other assessments not here relevant—and

against Chittenden Trust Co. for $1,-278.82.

Meanwhile, on February 9, 1959, the Commissioner of Internal Revenue made an assessment of $5,365.96 against Cutting & Trimming for 1958 taxes under the Federal Unemployment Tax Act. Under §§ 6321 and 6322 of the Internal Revenue Code of 1954, this amount thereupon became "a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." On June 2, 1959, notice of lien was filed pursuant to § 6323 of the Code.

Later, in 1961, the United States brought this action, against Cutting & Trimming, Chittenden Trust Co., the State of Vermont, and Rainbow Children's Dress Company, to establish the indebtedness of Cutting & Trimming for taxes in a larger amount than the February 9, 1959, assessment, and to foreclose its lien against the property of Cutting & Trimming held by the trust company ahead of Vermont's lien. Vermont's answer alleged that its lien had priority as a result of the October 21, 1958, assessment.[1] On cross-motions for judgment on the pleadings, the District Court decreed that Chittenden Trust Co. apply the $1,878.52 held by it first to the principal and then to the interest of Ver-

mont's lien, with any balance payable to the United States, and directed, under F.R.Civ.Proc. 54(b), that this be a final judgment as to the trust company and the state.

In defending against the appeal of the United States from this judgment, Vermont relies on the principle that, at least as between liens of the same sort, the first in time is the first in right. It emphasizes that its lien, which predated the federal lien, was in every other material respect identical to it. The state lien, like the federal, attaches to "all property and rights to property, whether real or personal, belonging to" the taxpayer, arises "at the time the assessment * * * is made," and is valid once notice has been filed as against any subsequent "mortgagee, pledgee, purchaser or judgment creditor." 32 V.S.A. § 5765; 26 U.S.C. §§ 6321–6323. The *verbatim* similarity is not a coincidence; as Judge Gibson pointed out, 206 F.Supp. at 956, the Vermont legislation was avowedly modeled on the Internal Revenue Code. Enforcement also is similar; Vermont, like the federal government, could have enforced its lien on the fund here at issue either by a civil action in the courts or by direct seizure and public sale.[2] Against this the United States argues that the first-in-time principle is inappli-

---

[1]. Vermont does not, and could not, rely on its status as a judgment creditor under the October 23, 1959, judgment in the state court, since notice of the federal lien had been filed prior to that time. See 26 U.S.C. § 6323 (§ 3672 of Internal Revenue Code of 1939).

[2]. Section 7403 of the Internal Revenue Code provides for enforcement of a federal tax lien by civil action; §§ 6331–6344 provide for seizure and sale. Although Judge Gibson did not fully develop the statutory basis for his statement that public sale as well as civil action would be an available means of enforcing Vermont's lien, 206 F.Supp. at 953, see also 955, the proposition seems entirely sound. In 1958, when this case arose, the controlling provision was 32 V.S.A. § 5767, which states that "The lien provided for by section 5765 of this title may be foreclosed in the case of real estate agreeably with the provisions of law relating to

foreclosure of mortgages on real estate, and in the case of personal property, agreeably with the provisions of law relating to the foreclosure of chattel mortgages." While the provisions relating to foreclosure of mortgages on real estate apparently allow this to be done only by bill or petition in equity, see 12 V.S.A. § 4521 et seq., chattel mortgages can be foreclosed as well by direct public sale, 9 V.S.A. §§ 1793–1797; hence that remedy would have been available here as to the money held by the bank.

In 1959 Vermont strengthened these provisions by enacting 32 V.S.A. § 5763, which makes applicable to the employers' withholding tax here involved "[t]he provisions * * * of chapter 155 of this title." Those provisions include 32 V.S.A. § 6067, which provides that "When a tax * * * is not paid within sixty days after the same becomes due, the commissioner shall issue a warrant * * * to the sheriff * * * com-

cable because (1) decisions of the Supreme Court have established that the federal lien would prime Vermont's if Cutting & Trimming had been insolvent so that the federal priority-in-insolvency statute, 31 U.S.C. § 191 (former R.S. § 3466), would have come into play, and (2) the same principle should be—or at any rate has been—applied when the Government relies only on the tax lien statutes, §§ 6321–23 of the Internal Revenue Code.

■ The Government's first proposition is beyond successful challenge. In cases governed by R.S. § 3466, the Supreme Court has upheld the priority of United States tax claims against an Illinois tax lien, arising prior to the Government's, which we find indistinguishable from Vermont's here, State of Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 370–376, 67 S.Ct. 340, 91 L.Ed. 348 (1946), and even against an antecedent lien for state property taxes assessed upon certain machinery owned by the taxpayer, United States v. Gilbert Associates, Inc., 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071 (1953). It is the Government's second proposition that is debatable.

■ Considering the two statutes solely on the basis of their language and purpose, we find nothing that calls for identical results and much that leads to different ones. R.S. § 3466, which goes back to 1796, 1 Stat. 515, says, in the strongest possible terms, that "Whenever any person indebted to the United States is insolvent * * * the debts due to the United States shall be first satisfied." In cases to which it applies, it gives this prime position to all "debts due to the United States," whether liens or not; the only issue in such cases is how far the words of the statute should be restricted by withdrawing from their sweep property of the insolvent upon

which a rival claimant has secured a "lien." [3] It is in this connection that the Supreme Court has developed the rule that a lien contesting against the priority of the United States cannot escape the literal impact of R.S. § 3466 unless at "the crucial time" it was "definite, and not merely ascertainable in the future by taking further steps," as to the identity of the lienor, the amount of the lien, and the property to which it attaches, State of Illinois ex rel. Gordon v. Campbell, supra, 329 U.S. at 375, 67 S.Ct. at 347–348, 91 L.Ed. 348; whether a lien passing even this severe test will in fact escape the breadth of R.S. § 3466, the Court has not decided. Spokane County v. United States, 279 U.S. 80, 49 S.Ct. 321, 73 L.Ed. 621 (1929); People of State of New York v. Maclay, 288 U.S. 290, 53 S.Ct. 323, 77 L.Ed. 754 (1933); United States v. Texas, 314 U.S. 480, 62 S.Ct. 350, 86 L.Ed. 356 (1941); United States v. Waddill, Holland & Flinn, Inc., 323 U.S. 353, 65 S.Ct. 304, 89 L.Ed. 294 (1945); State of Illinois ex rel. Gordon v. Campbell, supra; United States v. Gilbert Associates, Inc., supra; See Kennedy, The Relative Priority of the Federal Government: The Pernicious Career of the Inchoate and General Lien, 63 Yale L.J. 905, 911–19(1954). In contrast, the federal tax lien statutes, which trace their ancestry to 1865, 13 Stat. 470–71, and were re-enacted for the first time in 1866, 14 Stat. 107, have remained silent for nearly a century on the very issue as to which R.S. § 3466 has spoken so clearly since the earliest days; they say nothing to create a priority for tax liens of the United States over similar but earlier tax liens of the states or municipalities. This silence of the lawmakers of 1865–66 becomes more eloquent when the language of the tax lien statutes is contrasted with the Bankruptcy Act of 1867, 14 Stat. 517, 531, passed by the same Congress that had re-

---

manding him to levy upon and sell the real and personal property of the taxpayer * * *."

3. If the rival claimant has attained the status of "mortgagee, pledgee, purchaser,

or judgment creditor," he then prevails, under 26 U.S.C. § 6323 (formerly § 3672 of the 1939 Code), against even an antecedent federal tax lien, if notice thereof has not been previously filed.

enacted the former legislation and by many of the same Congressmen who had passed it originally. Section 28 of the Bankruptcy Act gave priority, immediately after administration expenses, to "All debts due to the United States, and all taxes and assessments under the laws thereof," these being ranked ahead of "All debts due to the State in which the proceedings in bankruptcy are pending, and all taxes and assessments made under the laws of such State." Thus, when the Congress of those days wished to prefer the federal government, it knew how to say so.[4] Furthermore, it was not until United States v. Security Trust & Savs. Bank, infra, decided in 1950, that Congress could have had any reason to suppose that what it had failed to say with respect to priority in the tax lien legislation of the 1860's would be supplied for it by judicial construction.

■ With this background, one would think it fairly plain that when a tax lien of the United States encounters a state tax lien of precisely the same nature, the case would be governed by the "cardinal rule" laid down by Chief Justice Marshall in Rankin & Schatzell v. Scott, 12 Wheat. (25 U.S.) 177, 179, 6 L.Ed. 592 (1827):

> "The principle is believed to be universal that a prior lien gives a prior claim, which is entitled to prior satisfaction, out of the subject it binds, unless the lien be intrinsically defective, or be displaced by some act of the party holding it, which shall postpone him, in a court of law or equity, to a subsequent claimant."

Arguing against this, the Government tells us that "In the collection of its revenue the Federal Government must necessarily have supremacy over the states (and the numerous local tax authorities deriving their power from those states)," since "the Federal Government is not in a position * * * to match the timing of the innumerable state and local tax liabilities." Whatever force such an argument might or might not have with Congressmen, who after all are not without some local allegiances, the Government points to nothing in the language or history of the tax lien statutes to show that Congress entertained the purpose thus attributed to it. Moreover, the change in the priority provisions of the Bankruptcy Act made in 1898, 30 Stat. 563, and continued to this day, § 64, 11 U.S.C. § 104, whereby claims of states and their subdivisions, even when they have not become liens at the critical date, were elevated to the same rank as similar tax claims of the United States, casts doubt on the existence of the policy here asserted.

The Government quite rightly reminds us that, however all this may be, we are not reading from a clean slate but from one that bears copious writing by the Supreme Court. This begins, for present purposes, with United States v. Security Trust & Savs. Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950)—a case in which, as has been pointed out, the Court was "without benefit of a brief for the respondent."[5] The decision, which established priority of the federal tax lien over that arising from an attachment under a California statute permitting a plaintiff to attach the property of a defendant at any time "as security for the satisfaction of any judgment that may be recovered," is plainly distinguishable from the instant case. Although the attachment had preceded the date

---

4. See also § 5004(a) (1) of the Internal Revenue Code of 1954. This statute, which provides explicitly that the federal lien for taxes on distilled spirits shall be a "first lien" on the property to which it attaches, was first enacted in 1868, 15 Stat. 125. The enactment afforded protection to prior lienors whose liens would thereby be outranked by requiring that waivers of their priority be obtained before a distiller could obtain the performance bond necessary for legal entry into the distilling business. 15 Stat. 128, § 5177(b) (2) of the Internal Revenue Code of 1954.

5. Brown, The Supreme Court 1957 Term— Foreword: Process of Law, 72 Harv. L.Rev. 77, 84 n. 37 (1958).

of the federal lien, judgment had not, and the Supreme Court of California itself had said that "The attaching creditor obtains only a potential right or a contingent lien * * *," which, depending on the eventualities of his lawsuit, might never come into effect; the rule of "first in time, first in right" surely need not be read so broadly as to permit a state to place someone in the "first" position by resort to the fictional doctrine of "relation back." But Mr. Justice Minton went on to say:

> "In cases involving a kindred matter, i. e., the federal priority under R.S. § 3466, it has never been held sufficient to defeat the federal priority merely to show a lien effective to protect the lienor against others than the Government, but contingent upon taking subsequent steps for enforcing it. [Citing State of Illinois ex rel. Gordon v. Campbell, supra.] If the purpose of the federal tax lien statute to insure prompt and certain collection of taxes due the United States from tax delinquents is to be fulfilled, a similar rule must prevail here."

To us this falls considerably short of saying, as the Government asserts, that the entire body of law holding that certain liens had not reached the level required to raise the question whether they might overcome the priority expressly accorded the United States by R.S. § 3466, was transplanted to the federal tax lien statutes which by their terms ac-

corded none. We read it as saying only that, just as the § 3466 priority could not be overcome by a state's baptizing as a lien something which in fact was "merely a lis pendens notice that a right to perfect a lien exists," 340 U.S. at 50, 71 S.Ct. at 113, 95 L.Ed. 53, the rights of the federal government under the tax lien statutes likewise could not be.

■ That Mr. Justice Minton did not mean to say in Security Trust what the Government says he did, was made quite clear four years later in United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954). There, in upholding the liens of city real estate taxes and water rents insofar as these had attached before the federal tax assessments, he sharply distinguished the situation where "the debtor is insolvent" and hence "all the property of the debtor is involved," in which case "Congress has expressly given priority to the payment of indebtedness owing the United States * * * by § 3466 of the Revised Statutes," from the situation "where the debtor is not insolvent," in which case "Congress has failed to expressly provide for federal priority, * * * although the United States is free to pursue the whole of the debtor's property wherever situated." Id. at 85, 74 S.Ct. at 370, 98 L.Ed. 520.[6] In the latter situation, the Court held, "priority of these statutory liens is determined by another principle of law, namely, 'the first in time is the first in right.'" Ibid.[7]

---

6. The Court's next sentence, "The State, having a lien only upon property within its boundaries, may not reach beyond the state line to fasten its lien upon other property," may be thought to run exactly counter to the Government's contention, noted above, that the tax collection problems of the United States require a reading of the tax lien statutes that would prefer its liens to similar but earlier state or local tax liens.

7. The New Britain decision would seem to have definitively rejected one argument, not advanced in this Court, that would sustain the Government's position here. This is the view, taken by Mr. Justice Jackson's concurring opinion in Security

Trust, 340 U.S. at 51, 71 S.Ct. at 113–114, 95 L.Ed. 53, that the statute which is now § 6323 of the Internal Revenue Code of 1954 and was formerly § 3672 of the 1939 Code, see note 3 supra, by protecting the rights of mortgagees, pledgees, purchasers, and judgment creditors whose interests arise even after the federal tax lien where the latter has not been recorded, has the effect of subordinating all lienors who cannot bring themselves within one of those four categories even though their liens arise prior to the federal tax lien. The legislative history and purpose of the statute make the argument quite untenable, as is pointed out by Professor Brown in the comment cited in note 5 supra, 72 Harv.L.Rev. at 84–

Indeed, New Britain would unquestionably decide this case in favor of Vermont but for one circumstance, the crucial character of which the Government contends to have been recognized in New Britain itself. This is that the city liens for taxes and water rents that were there preferred over the federal tax liens "attached to specific pieces of real property." 347 U.S. at 84, 74 S.Ct. at 369–370, 98 L.Ed. 520. We thus are confronted with the not uncommon question whether, when the Supreme Court has mentioned a factor as one of several leading to a decision, this is to be regarded as critical. Cf. Larios v. Victory Carriers, Inc., 316 F.2d 63 (2 Cir., 1963). Illumination on that issue here is shed by another portion of the New Britain opinion, dealing with the city's contention that the specific nature of its liens, as against the general nature of the Government's, gave it priority even for liens attaching *after* the federal tax assessments. The Court rejected this claim on the basis that "the priority of each statutory lien contested here must depend on the time it attached to the property in question and became choate," 347 U.S. at 86, 74 S.Ct. at 370–371, 98 L.Ed. 520, and that the prior federal tax liens, although general, were "choate" as soon as they attached. It would seem that if the general federal tax lien under §§ 6321 and 6322 is thus sufficiently "choate" to prevail over a later specific local tax lien, a general state tax lien under an almost identically worded statute must also be "choate" enough to prime a later and equally general federal tax lien under Chief Justice Marshall's "cardinal rule" of "first in time, first in right," in the absence of contrary direction by Congress. So Judge Parker said

in dictum in United States v. Greenville, 118 F.2d 963, 966 (4 Cir., 1941), a case cited with apparent approval in New Britain, 347 U.S. at 84, 74 S.Ct. at 369–370, 98 L.Ed. 520.

The Government also presses upon us post-New Britain decisions of the Supreme Court under the tax lien statutes. Of these, only United States v. Buffalo Savings Bank, 371 U.S. 228, 83 S.Ct. 314, 9 L.Ed.2d 283 (1963), concerns rival liens arising from tax assessments of a state or municipality, and it adds nothing relevant to the instant case, since the local liens there, like the city liens held junior in New Britain, attached subsequent to the assessment of the federal taxes. United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1955) (attachment lien prior to judgment), and United States v. Liverpool & London & Globe Ins. Co., 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268 (1955) (garnishment lien prior to judgment), were similar to Security Trust and are distinguishable from the instant case on the same basis that it is. In United States v. Scovil, 348 U.S. 218, 75 S.Ct. 244, 99 L.Ed. 271 (1955), the federal taxes were assessed and had become liens before the landlord's distress warrant issued; only the notice of the federal liens postdated the warrant, and the Court held that the lien created by such a warrant was not a mortgage, pledge, judgment or purchase under § 3672 of the 1939 Code, corresponding to § 6323 of the 1954 Code. See notes 3 and 7, supra. In United States v. R. F. Ball Construction Co., 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510 (1958), decided *per curiam* by a 5–4 vote, the subcontractor's surety whose claim to priority was de-

85 & n. 39, and as Mr. Justice Jackson himself, by concurring in the Court's opinion in New Britain, apparently later recognized. The argument was heavily pressed upon the Court by the Government in New Britain, see its Brief at 6–7, 13, 22–24, and its Reply Brief at 7, but was demolished by Professor Kennedy as counsel for New Britain. See Supplemental Brief for Respondent at 10 n. 16, 11–12, 13–14. The Court's de-

cision in favor of the city's prior liens must be taken to have rejected it, since Mr. Justice Minton's opinion for the Court in United States v. Gilbert Associates, Inc., 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071 (1953), makes clear that New Britain could not have been considered a "judgment creditor" within the terms of former § 3672, and there was no other way in which the city could bring itself within that section.

nied had rested its case on its alleged status as a mortgagee under § 3672 of the 1939 Code. This was also the claim espoused by the four dissenting Justices, who referred to § 3672 as "the statute here conceded by the parties to be controlling." 355 U.S. at 589–590, 78 S.Ct. at 443–444, 2 L.Ed.2d 510. We see no reason to suppose that the case stands for anything more than a denial of this claim. But if it were to be read as having also decided that, apart from § 3672, the surety enjoyed no priority on the basis of "first in time, first in right" because its lien was not "choate," or if such a view is thought to have been a factor in the Court's decision that the surety's interest did not come within § 3672, the case can be distinguished here. For such a view may well have turned on the fact that, as appears from the opinion of the District Court, 140 F. Supp. 60 (W.D.Texas), aff'd, 239 F.2d 384 (5 Cir., 1956), and the record, the surety's claim, based on an assignment made by the subcontractor in consideration for a performance bond covering a construction job in Texas, was for liabilities incurred on the subcontractor's behalf in connection with a completely different job in Louisville, Kentucky; the bond for this other job was not executed until nearly nine months after the assignment of funds to become due to the subcontractor on the Texas job, and the liabilities for which the surety was seeking to recover out of these funds had not yet arisen at the time the federal tax liens arose. See 4 Corbin, Contracts (1962 pocket part), at 147, n. 72; United States v. L. R. Foy Construction Co., 300 F.2d 207 (10 Cir. 1962). The distinction would, indeed, be more satisfying if the federal tax assessment had preceded the making of the Louisville contract and not merely the accrual of losses thereunder, but there is nothing to indicate that the Court focused on this point.

There remain [8] a series of mechanics' lien cases, all upholding priority of the federal tax lien and all decided by *per curiam* reversal on petition for certiorari: United States v. Colotta, 350 U.S. 808, 76 S.Ct. 82, 100 L.Ed. 725 (1955); United States v. White Bear Brewing Co., 350 U.S. 1010, 76 S.Ct. 646, 100 L. Ed. 871 (1956); United States v. W. H. Vorreiter, 355 U.S. 15, 78 S.Ct. 19, 2 L. Ed.2d 23 (1957); and United States v. E. B. Hulley, 358 U.S. 66, 79 S.Ct. 117, 3 L.Ed.2d 106 (1958). See also United States v. Kings County Iron Works, Inc., 224 F.2d 232 (2 Cir., 1955). The Vorreiter case occasions no difficulty since, as appears from the report in 134 Colo. 543, 307 P.2d 475, 476 (1957), the federal tax lien arose, though it was not yet recorded, before the contracts giving rise to the mechanics' liens were made. Neither does the Hulley case since, as appears from the Government's petition for certiorari (in which is printed the unreported opinion of the Florida Circuit Court for Pinellas County), the United States tax assessment lists had been received by the District Director, and the federal tax liens had thus attached, on December 2, 1952 and January 7, 1954, long before the beginning of the construction work on March 11, 1955. In Colotta, the work had been completed before the federal assessment, 224 Miss. 33, 79 So.2d 474, 475, 86 So.2d 19 (1955), but the decision, made on the Government's unopposed petition for certiorari over the dissent of Mr. Justice Douglas, may have turned on the fact that the holders of the mechanics' liens had neither recorded their contracts under § 359 of the Mississippi Code nor filed the *lis pendens* notice provided for by § 380 before the federal lien arose, nor had they taken any steps to enforce their liens by bringing suit and obtaining judgment. In White Bear, which drew a dissenting opinion from Mr. Justice Douglas joined by Mr. Justice Har-

---

8. We are aware also of Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); United States v. Durham Lumber Co., 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371 (1960); and

Crest Finance Co. v. United States, 368 U.S. 347, 82 S.Ct. 384, 7 L.Ed.2d 342 (1961), but do not consider them relevant here.

lan, the mechanics' lien, although recorded, likewise had not been reduced to judgment when the federal taxes were assessed. See 227 F.2d at 361.

■ Apparently, as suggested by Judge Haynsworth, dissenting in United States v. Bond, 279 F.2d 837, 849 (4 Cir.), cert. denied, 364 U.S. 895, 81 S.Ct. 220, 5 L.Ed.2d 189 (1950),[9] the Supreme Court views a mechanics' lien, even if "duly filed and recorded and presently in the process of being foreclosed," as simply "an interim step in the lienor's progress toward the status of a judgment creditor and the foreclosure of all possible defenses to his claim," and thus as analogous to "the lien product of provisional remedies," such as those in Security Trust, Acri, and Liverpool & London. See Mr. Justice Douglas' dissent in White Bear, 350 U.S. at 1011, 76 S.Ct. at 647, 100 L.Ed. 871. Whether or not this is the right explanation of Colotta and White Bear, and whether or not we might agree with Judge Haynsworth as to the equity of the doctrine in cases where the federal tax assessment, or even the notice thereof, postdates the construction work, see 279 F.2d at 849 n. 8, we do not regard those decisions as controlling the case of a lien arising from a state or local tax assessment. Although such an assessment does not make the taxing body a "judgment creditor" with-

in § 6323 of the Code, United States v. Gilbert Associates, Inc., 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071 (1953), see note 7 supra, it goes considerably further along that road than a mechanics' lien, which arises out of a private contractual arrangement and to which the taxpayer may have all sorts of defenses. At least this is true where, as here, the state or local government is no more required than is the United States to resort to the courts to enforce its due. See note 2 supra. As the Supreme Court said in Bull v. United States, 295 U.S. 247, 260, 55 S.Ct. 695, 699–700, 79 L.Ed. 1421 (1935), "The assessment is given the force of a judgment, and if the amount assessed is not paid when due, administrative officials may seize the debtor's property to satisfy the debt." This distinction seems to us the only way to reconcile the Colotta and particularly the White Bear *per curiams*, subordinating a mechanics' lien, earlier and on specific property, to the lien of a federal tax assessment, later and general, with the New Britain opinion, which prefers a local tax lien on specific property to a later general federal tax lien but prefers the latter to a subsequent specific local tax lien.[10] Doubtless we shall soon be instructed if we are wrong.[11]

Affirmed.

9. The actual decision in that case is not relevant to our problem; it held that the portion of New Britain upholding the priority of federal tax assessments over subsequently accruing local tax liens was not rendered inapplicable because the taxes were paid by a mortgagee whose mortgage, having priority over the federal taxes by virtue of § 6323 of the Internal Revenue Code (former § 3672), covered such taxes. Accord, United States v. Buffalo Savings Bank, supra, 371 U.S. 228, 83 S.Ct. 314, 9 L.Ed.2d 283.

10. A possible argument against reconciliation on this basis is that although New Britain's lien for real estate taxes could be enforced by levy and sale, 1949 Conn. Gen.Stats. § 1853 (1960 C.G.S. § 12–172), its lien for water rents could be enforced only by judicial foreclosure. 1949 Conn.Gen.Stats. §§ 758, 1863 (1960

C.G.S. §§ 7–239, 12–181). But the Government's Brief before the Supreme Court took no note of this distinction and, on the contrary, stated that both types of liens could be enforced summarily. P. 9 n. 2, p. 27 n. 13. Although a reference in the Reply Brief indicates that the Government may have become aware of the distinction, p. 5 n. 2, this hardly sufficed to disabuse the Court of the earlier concession (Brief, p. 27 n. 13) that both liens "may be enforced by levy and sale." See also Reply Brief, pp. 12–13.

11. We recognize that in certain of the post-New Britain decisions under the tax lien statutes the Supreme Court has, for one purpose or another, cited cases under R.S. § 3466. See United States v. Acri, 348 U.S. at 213, 75 S.Ct. at 241, 99 L.Ed. 264; United States v. Scovil, 348 U.S. at 220, 75 S.Ct. at 246–247, 99 L.

Ed. 271.  But we would think it wrong
to take such citations as overcoming the
considered statement in New Britain as

to the distinction between the two stat-
utes.

